THE STATE *ex rel.* ATTORNEY GENERAL v. THE SIMMONS HARDWARE COMPANY,

DIVISION ONE.

1. **Constitution:** CRIMINATING TESTIMONY: POOLS AND TRUSTS. Section 6 of the act of 1889 "for the punishment of pools, trusts and conspiracies," requiring some officer of every corporation to inform, under oath, the secretary of state (under penalty of fine, imprisonment, etc.) whether such company has violated said act, is in conflict with the constitutional declaration that "no person shall be compelled to testify against himself in a criminal cause," and it is, therefore, void.

2. ——: ——: ——. That constitutional provision protects an individual from being compelled to furnish a link to a chain of evidence by which his conviction of a criminal offense may be secured.

3. ——. A statute should not be declared unconstitutional unless very clearly so, and every reasonable intendment should be made to sustain it.

4. **Practice:** PLEADING. A motion for judgment on the pleadings is in the nature of a demurrer, and raises an issue of law only.

*Quo Warranto.*

JUDGMENT FOR DEFENDANT.

THIS is an information in the nature of a *quo warranto* on the relation of the attorney general, against the defendant, charging it with an unlawful exercise of its corporate franchises.

The proceeding is grounded upon the act of the general assembly of Missouri of 1889 "for the punishment of pools, trusts and conspiracies and as to evidence in such cases."

The information presents two distinct states of facts for the action of the court, upon each of which,

it is claimed, a forfeiture of defendant's franchise as a corporation should be adjudged, viz.:

*First.* It is charged that defendant has been, and is, a member of several pools, trusts and conspiracies with other corporations and individuals to regulate the price of hardware, and has violated in divers ways the commands of section 1 of the act. The particulars of these alleged unlawful proceedings of defendant are set forth quite fully.

*Second.* It is then charged that defendant, being a corporation organized under and subject to the laws of this state, its managing officers, named in section 6 of the act in question, failed, neglected and refused to make answer under oath to the letter of inquiry of the secretary of state, duly sent, as provided by that section.

This is the substance of the case made by the information, stripped of all formalities.

The defendant met these charges by an answer, in which it denied the facts alleged in the first cause of action. As to the second, it challenged the right to demand the answer under oath in reply to the secretary of state, upon various grounds of constitutional objection which will be indicated later.

Thereupon the attorney general filed a "motion for judgment upon the return" (or answer), which has been fully argued by counsel and submitted to the court for decision.

All other material facts appear in the opinion of the court.

*John M. Wood,* Attorney General, for the State.

(1) Corporations are subject to state control and to such general regulations for the good government of the state and the protection of the rights of individuals

as may be deemed important. Cooley's Constitutional Limitations [5 Ed.] 710, 713; *Gorman v. Railroad*, 26 Mo. 450; *Sloan v. Railroad*, 61 Mo. 24; *St. Louis v. Co.*, 96 Mo. 627; Morawetz on Corporations, secs. 1062, 1076, 1021, *et seq.; State v. Bank*, 5 Ohio St. 171. (2) Contracts and agreements, such as prohibited and sought to be prevented by the act set out in the information, were illegal and void at common law, as being in restraint of trade and opposed to public policy. They have never been, and are not now, protected by the constitution of this state, or of the United States, and rights claimed by reason thereof cannot be upheld. *Leslie v. Lorillard*, 110 N. Y. 533; *People v. O'Brien*, 111 N. Y. 37; *Arnot v. Coal Co.*, 68 N. Y. 558; *Stanton v. Allen*, 5 Denio, 434; *Clancey v. Co.*, 62 Barb. 395; *People v. Fisher*, 14 Wend. 9; *Colles v. Directory Co.*, 11 Hun, 397; *Coal Co. v. Coal Co.*, 68 Pa. St. 173; *Salt Co. v. Guthrie*, 35 Ohio St. 672; *Craft v. McConaughy*, 79 Ill. 346; *Raymond v. Leavitt*, 46 Mich. 447; *Bagging Ass'n. v. Koch & Co.*, 14 La. Ann. 168; *Hartford, etc., v. Railroad*, 3 Robt. 411; *Stewart v. Trans. Co.*, 17 Minn. 395; *Gas Co. v. Gas Co.*, 2 Am. State Rep. 133; *Santa Clara, etc., v. Hayes*, 76 Cal. 387; *Alger v. Thacher*, 19 Pick. 51; *Crawford v. Wick*, 18 Ohio St. 190; *St. Louis v. Gaslight Co.*, 70 Mo. 119. (3) Corporations cannot consolidate their funds or form a partnership, unless authorized by express grant or necessary implication. *N. Y. & S. C. Co. v. Bank*, 7 Wend, 412; *Bank v. Gray*, 14 Barb. 471. Other cases to the same effect may be cited. *Case of Monopolies*, 11 Coke, 84; *Ray v. Mackin*, 100 Ill. 246. Arrangements and combinations to prevent competition in bidding at auction sales are illegal. *People v. Stevens*, 71 N. Y. 545; *Marsh v. Russell*, 66 N. Y. 288; *Hilton v. Eckersley*, 6 Ell. & Bl. 47. As in restraint of trade. *West Va. v. Co.*, 46 Am. Rep. 527; *Angier v. Webber*, 92 Am. Dec. 751–765n.

(4) "An incorporated company" for a specific object has no rights except such as are specially granted, and those that are necessary to carry into effect the powers so granted. *Mathews v. Skinker*, 62 Mo. 331. To the same effect are *Ruggles v. Collier*, 43 Mo. 375; *Bank v. Young*, 37 Mo. 406. "Monopolies are justly odious, as they operate not only injuriously to trade, but against the general prosperity of society." *Bridge v. Bridge*, 11 Pet. 567. "By granting a franchise the state does not divest itself of any portion of its sovereignty; but to advance the public interests one or more individuals are vested with a capacity to exercise the powers necessary to attain the desired object." 11 Pet. 569, *supra*. "It is the right and duty of the state to see that these public corporations do not wilfully violate the constitution or the law." *State ex rel. v. Saline Co.*, 51 Mo. 350. (5) The act is not in violation of the provisions of section 23 of article 2 of the constitution of Missouri, and article 5 of the constitution of the United States. 2 Morawetz on Corporations, sec. 1092.

*Boyle, Adams & McKeighan* for respondent.

(1) The provision of section 6 of the statute in question, requiring corporations and their officers to make answer and affidavit, whether or not they have violated any of the provisions of the law, is unconstitutional and void, being in violation of section 23, article 2, Constitution of Missouri, and article 5, amendments to the federal constitution. The federal and state constitutions say to the state, "Prove your case." The statute says, "Prove your innocence, or the secretary of state becomes your executioner." (2) It is a well-recognized rule of common law that a witness is privileged from answering any question which tends

to criminate him, or the answer to which may subject him to forfeiture of estate. This also includes inculpatory documents, and excuses a witness from furnishing or producing the same. The term witness, as thus used, includes not only the defendants in criminal actions, but the parties and witnesses in all civil actions or proceedings, and the rule fully protects any such party or witness in any inquiry or proceeding, from giving or furnishing testimony, which could be used against him in criminal prosecution, or which might subject him to a penalty or forfeiture. Wharton on Evidence, secs. 533–34, 751; Wharton on Criminal Evidence, secs. 463–9; Wharton on American Law, sec. 563; Greenleaf on Evidence, secs. 451–3; 2 Phillips on Evidence, star pp. 930–7; *Boyd v. United States,* 116 U. S. 616; *State v. Talbott,* 73 Mo. 347; *Emery's case,* 107 Mass. 172; *Com. v. Bank,* 21 Pick. 542; *Horstman v. Kaufman,* 97 Pa. St. 147. (3) This is a suit to enforce a forfeiture of a corporate franchise or charter, and hence is "within the reason of criminal proceedings." That a corporate franchise is property, is declared by the following authorities: 3 Parsons on Contracts [6 Ed.] p. 51; Lewis on Eminent Domain, secs. 135, 137; *College v. Woodward,* 4 Wheat. 625; *Thompson v. People,* 23 Wend. 537; *W. R. B. Co. v. Dix,* 4 How. (U. S.)

BARCLAY, J.—This case involves the constitutionality of that section or part of the act of 1889 for the punishment of pools, trusts, etc. (Sess. Acts, 1889, p. 97, sec. 6), which requires the president, secretary, treasurer or a director of an incorporated company to make answer under oath as to whether that corporation "has merged all or any part of its business or interest in or with any trust, combination or association of persons or stockholders as named in the preceding

provisions'' of that act.   As now submitted, the case presents that issue alone.

A motion for judgment on the pleadings, after answer filed, must be dealt with on the assumption that the facts stated in the answer are true.   Such a motion is in the nature of a demurrer and raises an issue of law only.   No question of its regularity in the present case is made; but both parties have availed themselves of it to discuss the broad merits of the controversy and have now submitted the cause, as we understand, for final action.

As defendants have denied totally the first charge of the information (relating to the alleged violation of the first section of the act), and have thereby raised an issue of fact upon which the burden of proof rests on the plaintiff, it is manifest that as to that charge, unsupported by any evidence, the ruling must be for defendant, as both parties concede.   The gist of their difference is found in a consideration of the second charge or cause of action.

The section whose validity is questioned is this:

"Sec. 6.   Any corporation created or organized by or under the laws of this state which shall violate any provision of the preceding sections of this act shall thereby forfeit its corporate right and franchises, and its corporate existence shall thereupon cease and determine; and it shall be the duty of the secretary of state, after the passage of this act, to address to the president, secretary or treasurer of each incorporated company doing business in this state a letter of inquiry as to whether the said corporation has merged all or any part of its business or interest in or with any trust, combination or association of persons or stockholders as named in the preceding provisions of this act, and to require an answer, under oath, of the president, secretary, treasurer or any director of said company; a

form of affidavit prescribed by the secretary of state shall be inclosed in said letter of inquiry; and, on refusal to make oath in answer to said inquiry, the secretary of state shall immediately revoke the charter of said company, and make publication of such revoca tion in four newspapers of general circulation in the four largest cities of the state.''

It is, moreover, necessary to quote a prior section, the third, the terms of which have a material bearing upon the litigation, viz.:

'' Sec. 3. If a corporation or a company, firm or association shall be found guilty of a violation of this act, it shall be punished by a fine of not less than one per cent. of the capital stock of such corporation or amount invested in such company, firm or association and not to exceed twenty per cent. of such capital stock or amount invested. Any president, manager, director or other officer or agent or receiver of any corporation, company, firm or association, or any member of any company, firm or association, or any individual, found guilty of a violation of the first section of this act, shall be punished by a fine of not less than $500 nor to exceed $5,000, and in addition thereto may be imprisoned in the county jail not to exceed one year.''

The defendant here does not attempt to assert any exemption from regulation or modification of its charter powers within the proper limits of constitutional authority, so that question need not be discussed; but it insists that to demand of one of its officers an answer under oath to an official inquiry, touching a matter which may form the subject of a criminal accusation against him, is an infringement of his rights and of its own, as secured by the federal constitution as well as by that of our own state.

In looking into the merits of this contention we shall merely consider it with reference to the constitu-

tion of Missouri, as in the view we take of the subject it will not be necessary to go further.

It is scarcely essential at this day to premise that our written constitution, as the most direct expression of the will of the people, furnishes the paramount rules for their government. Any enactment by their accredited representatives which comes in conflict with it, must be regarded as in excess of the authority of the latter, and hence of no effect. When such a clash is plainly apparent, it is the province of the courts, when properly invoked, to so declare. In so doing they merely execute a power intrusted to them by the people, and which must, obviously, be lodged somewhere, to give the organic law a practical vitality.

Strictly speaking, the courts do not assume, and have no authority, to nullify an act of the legislative department. They are simply empowered to decide, upon proper occasion, whether or not there is an inconsistency between such an act and the terms of the constitution.

It is settled law that no legislative enactment should be declared unconstitutional unless it appears very clearly so, and that every reasonable intendment should be made to sustain it.

These propositions, no doubt, seem trite; but, as this case will require us to recur somewhat to elementary principles of constitutional government, it has been thought well to first remark upon the nature of our own duty in the premises.

The Missouri constitution asserts "that no person shall be compelled to testify against himself in a criminal cause." This command is found in the same, or closely similar, language in the fundamental law of most, if not of all, of the United States. To fully grasp its meaning we must note its place in the history of the

law as one of the most important of the rules of procedure that express the fundamental difference between the criminal practice prevailing in continental Europe and that of countries which trace their laws, as we do, to the English source. In the former, the accused is required to submit to a rigid official examination touching the charge against him. In the latter such an examination is positively forbidden. The reason of this difference is found in that higher regard for the personal rights of the individual citizen, which obtains in countries following the English common law, and to which, in part at least, is traceable the growth of that independent spirit which has secured to the people of those countries so large a share of liberty, and placed them in the vanguard of the world's progress.

The constitutional provision before us is, no doubt, quite inconvenient in some instances, as a barrier to investigation of criminal conduct, but its larger value in expressing and enforcing a principle of individual right is thought to more than counterbalance such inconvenience.

But what is its scope? In answering this question, we must keep in view the reason and spirit which form its background. Does the term "criminal cause" refer merely to litigated proceedings in a court of justice? If it does, then the provision in question does not reach far enough to shield the defendant in its present position. Fortunately, at this point of our inquiry we are greatly aided by recent decisions elsewhere.

In *Counselman v. Hitchcock* (1892), 142 U. S. 547, the supreme court of the United States construed the language of the federal constitution (declaring that no person "shall be compelled in any criminal cause to be a witness against himself") as protecting one, sub-

pœnaed before the grand jury, from making disclosures which might subject him to subsequent prosecution for violation of the interstate commerce act.   In the course of the opinion in that case, reviewing a great number of state decisions on the same point (which we need not, therefore, otherwise cite) the court by Mr. Justice BLATCHFORD says:   "But, as the manifest purpose of the constitutional provisions, both of the states and of the United States, is to prohibit the compelling of testimony of a self-criminating kind from a party or a witness, the liberal construction which must be placed upon constitutional provisions for the protection of personal rights would seem to require that the constitutional guaranties, however differently worded, should have as far as possible the same interpretation. *   *   * It is a reasonable construction, we think, of the constitutional provision, that the witness is protected 'from being compelled to disclose the circumstances of his offense, the sources from which, or the means by which, evidence of its commission, or of his connection with it, may be obtained, or made effectual for his conviction, without using his answers as direct admissions against him.' *Emery's Case*, 107 Mass. 172, 182."

This led, of course, to the conclusion that the witness in question could not be required to make the disclosures sought.

In *Boyd v. United States* (1886), 116 U. S. 616, the same result was reached by that court in an elaborate opinion by Mr. Justice BRADLEY, in which it was held that the act of congress of June 22, 1874, was unconstitutional in that it required a claimant of property, seized for violation of the revenue laws, to produce his private books and invoices in court, or, in event of failure to do so, the allegations against him, respecting the property seized, should be "taken as

confessed.'' That decision embodies the results of much research, and strongly supports the applicability of the constitutional protection to such a case as that at bar.

One of the most philosophical text-writers on the law of evidence summarizes the conclusions of many decisions on the subject thus: ''It has been said that a witness cannot be compelled to give a link to a chain of evidence by which his conviction of a criminal offense can be insured, and this position is abundantly sustained by authority.'' 1 Wharton on Evidence [3 Ed.] sec. 536, and cases cited.

Let us turn the light of the principles which these authorities furnish upon the case before us.

The third section denounces a penalty (in event of violation of the terms of the act) of a fine of not less than one and not more than twenty per cent. of the capital stock against the corporation, and another penalty of fine and imprisonment upon the officers required by section 6 to make the answer under oath. The corporation, as well as its managers, would be thus liable to a forfeiture of goods, and the officers to imprisonment should they be forced to disclose a breach of law on the part of the corporation. If, on the other hand, they held their peace (as the constitution permits even the greatest offender to do), section 6 of the act purports to sanction, as a penalty for so doing, the immediate revocation of the corporate charter.

It seems to us very clear that such attempted legislation is out of harmony with the true spirit and purpose of the constitutional language quoted.

One necessary effect of such a statute would be to destroy that presumption of innocence, which by time-honored sanction of the common law is thrown around the humblest individual charged with crime, even where the sovereign power of the state is the accuser.

It would place the burden of exculpation on the accused, without any previous proof of guilt, and, in attempting to do so, we think, violates that personal immunity in this regard intended to be protected by the constitution. This appears to us too obvious for any extended discussion.

In the formation of political organisms, called states, under written constitutions like ours, the people sometimes see fit to expressly reserve to themselves the continued enjoyment of certain rights, which they deem too sacred to be surrendered to the control or regulation of their governing representatives.

By those who are familiar with the historic struggles through which the present peaceful acknowledgment of the civil liberties of the people has been reached, those reserved rights are justly regarded as objects of the most tender and earnest care, and are accorded a reasonable construction in harmony with the principles of freedom, which they seem designed to embody. They form an important part of the personal liberty which all our American systems of government are intended to secure.

But individual rights would be held by a very frail tenure without the guaranty for their practical assertion which the Missouri constitution affords, including, not merely a declaration of them, but the creation of adequate machinery in the action of the judiciary for their enforcement.

It is one of the most solemn and imperative obligations devolved upon the courts to assert when needful the constitutional rights of the citizen, and we do not hesitate to discharge that duty when the occasion requires it.

However desirable the ends aimed at in this enactment may seem, the means devised in section 6 to

reach them are plainly in conflict with the fundamental law. The latter, however, is of supreme authority, whose mandate it is our bounden duty to enforce.

In view of the conclusion above indicated, it becomes unnecessary to consider some of the other questions started by counsel.

Upon the pleadings, as they now stand, defendant is entitled to judgment, and it will accordingly be entered. All the judges of this division of the court concur.