PEOPLE, *ex rel.* MOLL, *v.* DANZIGER.

1. EQUITY — EVIDENCE — CONSTITUTIONAL LAW — DEFENDANT MAY NOT BE REQUIRED TO CRIMINATE HIMSELF BY ANSWERING BILL IN CHANCERY.

Section 16, art 2, of the Constitution, providing that no person shall be compelled to criminate himself, is applicable to an answer in a chancery case, since the answer of a defendant may be read in evidence on the hearing as an admission, and therefore defendant may not be required to make answer to such allegations as tend to criminate himself.

2. SAME — BILL FOR DISCOVERY—EQUITABLE RELIEF NOT TO BE DENIED PLAINTIFF BECAUSE DEFENDANT'S ANSWER MIGHT CRIMINATE HIMSELF.

Where a bill is filed solely for discovery, and the facts upon which discovery is sought are such as would tend to criminate defendant, it may not be maintained at all and should be dismissed; but where the bill is seeking general equitable relief it should not be dismissed for the reason that defendant's answer may tend to criminate himself, since he may protect his rights by refusing to an-

[1]Equity, 21 C. J. § 554; Witnesses, 40 Cyc. p. 2537; [2]Id., 21 C. J. § 806 (Anno); Discovery, 18 C. J. §§ 41, 42 (Anno); 20 R. C. L. 434; 4 R. C. L. Supp. 1824; 6 R. C. L. Supp. 1726.

swer, and plaintiff still be granted such equitable relief as he may be entitled to.

3. Witnesses—Nuisances—Constitutional Law—Statutes.

Act No. 389, Pub. Acts 1925, providing for the abatement of nuisances, is not void under section 16, art. 2, of the Constitution, because defendant, in its answer to a bill filed thereunder, might criminate itself, since it may invoke its constitutional right and refuse to answer such allegations as would have that effect.

4. Equity — Dismissal of Bill Not Required if Defendant's Rights Protected.

That defendant, if required to make answer to allegations in a bill to abate a nuisance under Act No. 389, Pub. Acts 1925, might criminate itself, is insufficient reason for dismissing the bill and precluding plaintiff from obtaining equitable relief, since defendant may protect its constitutional rights by refusing to make answer thereto.

5. Same—Defendant Not Sole Judge of Whether Answer Might Criminate Itself.

While defendant may assert its constitutional right and decline to answer such paragraphs of the bill as call for an answer which might criminate itself, it is not the sole judge of such question, but it belongs to the court to consider and decide whether any direct answer can implicate it, and if the decision is in the negative it must answer; if a direct answer may criminate itself, it is the sole judge as to what its answer shall be.

6. Appeal and Error—Statutes—Questions Not Considered.

The Supreme Court will refuse to consider objections to Act No. 389, Pub. Acts 1925; not urged by defendant either in this court or in the court below, although urged to do so by plaintiff.

Appeal from Wayne; Merriam (De Witt H.), J. Submitted March 1, 1927.    (Docket No. 177.)    Decided April 1, 1927.

Bill by the people of the State of Michigan, on the relation of Lester S. Moll, assistant prosecuting attorney of Wayne county, against Jacob C. Danziger

---

[3]Witnesses, 40 Cyc. p. 2539 (Anno); [4]Equity, 21 C. J. § 806 (Anno); [5]Nuisances, 29 Cyc. p. 1243; Witnesses, 40 Cyc. p. 2550; [6]Appeal and Error, 3 C. J. §§ 589, 636; 4 C. J. § 3059.

and others to abate a nuisance under Act No. 389, Pub. Acts 1925.  From an order granting a motion to dismiss, plaintiff appeals.  Reversed and remanded.

*William W. Potter,* Attorney General, *Harry N. Deyo,* Assistant Attorney General, *Robert M. Toms,* Prosecuting Attorney, and *Eugene A. Walling,* Assistant Prosecuting Attorney, for plaintiff.

*Miller, Baldwin & Boos,* for defendants.

FELLOWS, J.  The bill in this case is filed under Act No. 389, Pub. Acts 1925, to abate a nuisance, alleging that the premises in question were being used for the purposes of lewdness, assignation and prostitution.  Defendant Cass-Henry Building Company made a motion to dismiss on the ground that the act is unconstitutional for various reasons, among them the following:

"That the allegations of the bill accuse this defendant of the commission of a crime and a misdemeanor, and the bill seeks to subject and expose this defendant to a penalty and a forfeiture, and that defendant can not be compelled to make answer to any allegations which will accuse itself or admit the commission of any penalty or forfeiture; and that any provision of Act No. 389, Pub. Acts 1925, compelling this defendant to make answer or suffer default is unconstitutional and void."

For this reason the trial judge held the act invalid and dismissed the bill.  The State appeals.  We, therefore, have before us these questions:  May a defendant be required to answer allegations of a bill when the answer tends to criminate him?  And if not, is the act invalid for this reason, and should the bill be dismissed on this ground?  The importance of these questions both to the public and to the individual require their consideration at length.

We are here dealing with the provisions of the State

Constitution, the provisions of the Federal Constitution not being applicable to proceedings in State courts. *Twining* v. *New Jersey*, 211 U. S. 78 (29 Sup. Ct. 14). Section 16, art. 2, of the Constitution of this State, provides:

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law."

In the recent case of *Joslin* v. *Noret*, 224 Mich. 240, we pointed out that this State was aligned with those States which had given the constitutional provision here under consideration a liberal construction and we there held, following earlier cases, that its provisions protected a witness in the trial of a civil case from being required to give testimony which would tend to establish the violation by him of a penal statute of the State. The answer of a defendant may be read in evidence on the hearing as an admission, and an exhaustive examination of the cases and textbooks satisfies us that the constitutional provision is applicable to an answer in a chancery case. We shall first consider what is said by the text-writers, 28 R. C. L. p. 434, thus states the rule:

"The rights intended to be protected by the constitutional provision that no man accused of crime shall be compelled to be a witness against himself are so sacred, and the pressure toward their relaxation so great when the suspicion of guilt is strong and the evidence obscure, that it is the duty of courts liberally to construe the prohibition in favor of personal rights, and to refuse to permit any steps tending toward their invasion. Hence, there is the well-established doctrine that the constitutional inhibition is directed not merely to the giving of oral testimony, but embraces as well the furnishing of evidence by other means than by word of mouth, the divulging, in short, of any fact which the accused has a right to hold secret."

In 30 Cyc., at page 1356, will be found the following:

"As defendant in a penal action cannot be required to furnish evidence against himself, he cannot be required to file an answer specifically denying all the allegations of the petition."

Pomeroy thus lays down the rule (1 Pomeroy's Equity Jurisprudence [4th Ed.], § 202):

"As a general proposition, the discovery, in order to be granted, must be in aid of some object which a court of equity can regard with approval, or at least without disapproval,—some object which is not opposed to good morals or to the principles of public policy embodied in the law.    This doctrine is the foundation of several particular rules regulating the practice of discovery.    The first of these particular applications of the doctrine is, that a defendant in the discovery. suit, or in a suit for relief as well as discovery, is never compelled to disclose facts which would tend to criminate himself, or to expose him to criminal punishment or prosecution, or to pains, penalties, fines, or forfeitures.    He may refuse an answer, not only to the main, directly incriminating facts, but to every incidental fact which might form a link in the chain of evidence establishing his liability to punishment, penalty, or forfeiture."

We quote section 1942, 3 Story's Equity Jurisprudence (14th Ed.):

"In the next place, courts of equity will not entertain a bill for a discovery to aid the promotion or defense of any suit which is not purely of a civil nature. Thus, for example, they will not compel a discovery in aid of a criminal prosecution, or of a penal action, or of a suit in its nature partaking of such a character, or in a case involving moral turpitude; for it is against the genius of the common law to compel a party to accuse himself; and it is against the general principles of equity to aid in the enforcement of penalties or forfeitures."

It will be noted that both Pomeroy and Story refer specifically to discovery, and an examination of the cases will disclose that in a large number of them the question arose on bills for discovery, or bills which

incidentally sought discovery. This, we think, should be borne in mind, lest we confuse the result reached with the reason for reaching such result. The cases are quite uniform in holding that where the bill is filed solely for discovery, and the facts upon which discovery is sought are such as would tend to criminate defendant, the bill can not be maintained at all and should be dismissed on demurrer. The bills in these cases were filed solely to require defendants to disclose by answer what they could not be required to disclose as witnesses on the stand, and sought to accomplish by indirection what could not be accomplished directly. These cases are helpful on the question now under consideration, but they should not be taken as holding that a bill seeking general equitable relief may not be maintained at all when a defendant, to answer truthfully, must disclose facts which would tend to criminate himself. His rights must be protected, but the fact that his conduct has been such as to justify a criminal prosecution does not preclude the other party from seeking against him appropriate equitable relief. This is settled by our former holdings, to which we will later refer.

The cases both in England and in this country are quite uniform in holding that a defendant may not be required in his answer to state facts which would tend to criminate himself. Among the English cases see *Fisher* v. *Owen*, L. R. 8 Ch. Div. 645; *Glynn* v. *Houston*, 1 Keen, 329; *Earl of Lichfield* v. *Bond*, 6 Beav. 88; *Claridge* v. *Hoare*, 14 Ves. Jr. 59; *Harrison* v. *Southcote*, 2 Ves. Sr. 389; *Attorney General* v. *Lucas*, 2 Hare, 566; *Honeywood* v. *Selwin*, 3 Atk. 276; *Smith* v. *Read*, 1 Atk. 526; *Chauncey* v. *Tahourden*, 2 Atk. 392. Among the American cases see *United States* v. *Saline Bank*, 1 Pet. (U. S.) 100; *United States* v. *National Lead Co.*, 75 Fed. 94; *Thompson* v. *Whitaker Iron Co.*, 41 W. Va. 574 (23 S. E. 795); *Higdon* v. *Heard*, 14 Ga. 255; *Daisley* v. *Dun*, 98 Fed. 497;

*Stewart* v. *Drasha,* 4 McLean (U. S.), 563; *Poindexter*
v. *Davis,* 6 Grat. (Va.) 481; *Northrop* v. *Hatch,* 6
Conn. 361; *Robson* v. *Doyle,* 191 Ill. 566 (61 N. E.
435); *Union Bank* v. *Barker,* 3 Barb. Ch. (N. Y.) 358;
*Black* v. *Black,* 26 N. J. Eq. 431; *Noyes* v. *Thorpe,* 73
N. H. 481 (62 Atl. 787); *Livingston* v. *Harris,* 3 Paige
Ch. (N. Y.) 528; *Livingston* v. *Tompkins,* 4 Johns.
Ch. (N. Y.) 415 (8 Am. Dec. 598); *Union Glass Co.*
v. *National Bank,* 10 Pa. Co. Ct. Rep. 565; *State* v.
*Simmons Hdwe. Co.,* 109 Mo. 118 (18 S. W. 1125, 15
L. R. A. 676).

For the present we shall refer to but one of these
cases (*Robson* v. *Doyle, supra*).   An action at law
had been brought to recover a penalty under the Illinois
criminal code inhibiting the gambling in puts and calls
on wheat.   It was not brought by one who had lost
any money by such deals.   Other similar actions were
contemplated by plaintiff.   He filed a bill for dis-
covery to require defendant to disclose his dealings in
puts and calls with others.   The bill was demurred
to.   In sustaining the demurrer it was said, among
other things:

"So far as the bill is filed to obtain evidence for the
purpose of commencing suits in the future and re-
covering penalties from the defendant, it is bad beyond
all question.   That part of the bill not only seeks to
compel the defendant to disclose a cause of action
against himself for penalties for transgressing the law
where the bill shows no cause of action whatever, but
it is purely a fishing bill so far as it seeks such a
discovery.   It does not seem to be contended that the
bill in that respect is authorized by any principle of
the law or any statutory provision.   *   *   *   The
suits at law are not for the recovery of anything which
the complainant has lost or paid, but are purely
prosecutions in special actions on the case for penal-
ties for violations of the penal code.   The purpose of
the discovery asked for is to enable the plaintiff to
maintain the prosecution and recover the penalties.
The very purpose of the discovery is to subject the

defendant to the penalties prescribed by the statute and with the sole object of recovering such penalties. Now, courts of equity have always withheld their aid in actions which were penal in their nature, and would never compel a defendant to disclose facts which would expose him to criminal punishment or prosecution, or to pains, penalties, fines or forfeitures. A defendant may refuse to answer, not only as to facts directly criminating him, but as to any fact which might form a link in the chain of evidence establishing his liability to punishment, penalty or forfeiture (1 Daniel's Ch. Pr. 561-569; 2 *Id.* 1557; 1 Pomeroy's Eq. Jur. §§ 196, 202; 6 Enc. Pl. & Pr. 742, 744). This was the settled rule of the English courts of equity, and the principle was made a part of our fundamental law in the State and Federal Constitutions."

This case, it will be noted, belongs to that class of cases to which we have adverted, where the bills are filed solely for discovery of acts criminal in their nature. These bills show upon their face that the disclosure sought is of facts which tend to establish the violation of a penal statute and are, therefore, bad on demurrer. But the case is in line with the many other holdings that a defendant may not be required by his answer to state facts which will tend to criminate himself, and this must be regarded as the settled law both in England and in this country.

Does it follow that because cases will arise under this act where to answer certain paragraphs of the bill and answer them truthfully will require the disclosure of facts tending to criminate the answering defendant, that the whole act must fall? We think not. In the recent case of *People* v. *Holschuh,* 235 Mich. 272, it was pointed out that the act was confirmatory of a power already inherent in a court of equity, and that without it a court of equity had the inherent power to abate a nuisance. And in *Detroit Realty Co.* v. *Barnett,* 156 Mich. 385 (21 L. R. A. [N. S.] 585), it was said by Mr. Justice HOOKER, speaking for the court:

"We have read the testimony, and unhesitatingly say that a more obvious case of private nuisance has not been presented to this court within the recollection of the oldest member, and none has been more clearly proved. We must also confess our ignorance of authorities which would justify the court in his conclusion that, while there is a jurisdiction in a court of equity to abate a private nuisance, ordinarily it has not jurisdiction if it is so much of a nuisance as to make criminals of those who maintain it. We find such authority neither in the brief of counsel nor in the opinion of the court, and the proposition is so at variance with the settled law that we are not surprised at its absence."

This is in consonance with numerous holdings in other States many of which are cited in plaintiff's brief; we quote from but one of them. In *State* v. *Rabinowitz,* 85 Kan. 841 (118 Pac. 1040, 39 L. R. A. [N. S.] 187), it is said:

"The fact that the maintaining of a common nuisance is made a public offense, or that special provision is made for its abatement, is not necessarily a bar to the enjoining of a public nuisance by a court of equity. While courts of equity can not be used to punish crime or enforce the criminal laws, still, if the acts done and threatened to be done are such as to bring them within the jurisdiction and power of a court of equity, its arm is not shortened by the fact that the same acts may be denounced as a crime. The mere criminality of an act, whether it be a public or private nuisance, will not deprive the injured party of his equitable remedies nor shelter the wrongdoer from the judgment of a court of equity."

We have a statute (3 Comp. Laws 1915, § 12554) permitting the calling of the opposite party for cross-examination. Such opposite party called under this statute is entitled, if interrogated as to facts which would tend to criminate him, to assert his constitutional rights. *Joslin* v. *Noret, supra.* Can it be said that such statute is invalid for the reason here

urged? We think not. Nor is the statute here involved invalid for this reason.

Should the bill have been dismissed? If so, it necessarily follows that many powers exercised by equity courts for centuries must be curtailed. Bills to abate nuisances so flagrant as to amount to a crime may no longer be maintained, trustees who have embezzled the funds of their *cestui que trustent* may no longer be required to account in equity, fraudulent transactions amounting to a conspiracy may not be remedied by courts of equity, bills for divorce on the grounds of adultery or on the ground of personal violence amounting to assault and battery will not lie, and the criminal conduct of defendant which he is not obliged to disclose by his answer would operate as a shield to protect him from the enforcement of his opponents' rights. Such is not the law and can not be. The constitutional rights of the defendant must be protected, but the constitutional rights of the plaintiff to his day in court must be likewise protected.

We have pointed out that in a considerable number of the cases the bills were filed solely for discovery, and where they show on their face that to require an answer would invade defendant's constitutional rights they have been dismissed on demurer. In such cases the discovery sought was of facts which would tend to criminate defendant and his answer under such circumstances could be used in evidence against him in a criminal proceeding. Such bills were properly dismissed on demurrer, and in *Claridge* v. *Hoare, supra,* it was held that the defendant could protect himself from discovery by plea. But in *Fisher* v. *Owen, supra,* it was held (we quote from the syllabus) :

"*Held,* on appeal, that supposing the matter inquired after to be an indictable offense, that was no reason for striking out an interrogatory, which, being relevant, was not scandalous; and that the remedy of the defendant was to decline to answer, on the ground that his answer might tend to criminate him."

In *Marshall* v. *Riley,* 7 Ga. 367, it was said by the court:

"The party called on to answer, under this act, may refuse to do so, and risk the consequences, or else he may answer under protest as to the legality of the testimony, and insist upon his objections on the trial. By pursuing the latter course, as was done in the present case, he waives no legal right; and should his objections be sustained, the evidence thus extorted will be rejected at the hearing."

And in Adams' Equity (8th Ed.), 4, it is said:

"If the facts are such as to exclude both a demurrer and a plea, the privilege may be claimed, and if the defendant states in his answer that he cannot give the information without affording evidence of his crime, he will not be compelled to give it."

In *Black* v. *Black, supra,* the bill was filed for a divorce on the grounds of adultery. It also sought discovery as to the adulterous acts. It was sustained as a bill for divorce but dismissed as to discovery. Here the bill is filed solely to abate a nuisance. Discovery is not sought. There is no showing before the court that defendant may not truthfully answer all the allegations of the bill without in any way criminating itself or furnishing criminating evidence.

The privilege is a personal one (28 R. C. L. p. 430), and numerous cases are found which hold that a witness who has been served with subpoena must attend the court, and if a subpoena *duces tecum* is served to produce papers, must produce the papers in court and must be sworn. When a question is asked which he is privileged from answering, he is entitled to the protection guaranteed by the Constitution. This is but saying that the constitutional rights of the citizen will be protected, but they will be protected in an orderly way. Thus, in *People* v. *Marxhausen,* 204 Mich. 559 (3 A. L. R. 1505), we held that defendant was

protected by the Constitution from the invasion of his home by unreasonable and unlawful search and seizure, and we there pointed out the orderly procedure for the assertion of such rights, and in numerous cases following we have held that such procedure must be followed.

The supreme court of Alabama recently had this question before it. *Ridge* v. *State,* 206 Ala. 349 (89 South. 742). We approve in part and disapprove in part what was there held. It was there said by Justice Somerville, speaking for the court:

"As to the requirement of a sworn answer from respondents in these proceedings, and the suggestion that it violates section 6 of the Constitution declaring that one who is accused of crime 'shall not be .compelled to give evidence against himself,' it is sufficient to say that, if the required answer would involve incriminating admissions of a criminal offense by a respondent, such respondent can successfully invoke the protection of his constitutional privilege."

This we approve, but the learned Justice then proceeded to state:

"In such a case, the respondent not denying his responsibility for the nuisance charged, the result would normally be a decree *pro confesso,* followed by a final decree, according to the usual course of chancery practice; and the respondent could not be compelled to answer, as in contempt of the court."

This we do not approve. The assertion of a constitutional right should not deprive a party of his day in court. If it did, a constitutional right is but a shadow and its assertion only serves to ensnare the one asserting it.

We are persuaded that defendants' rights may be preserved and preserved in an orderly way under section 3 of Circuit Court Rule No. 25, which provides:

"Pleas in equitable actions, other than pleas in abatement and to the jurisdiction (which are abolished

by statute), are abolished, and all defenses which might formerly be raised by such pleas shall be interposed by answer provided that on cause shown by motion an issue so raised may be heard in advance of the trial in the cause."

In its answer defendant may assert its constitutional right to decline to answer such paragraphs of the bill as call for an answer which under this opinion violates such rights. The defendant, of course, is not the sole judge of such question. In the cases of *In re Moser,* 138 Mich. 302 (5 Ann. Cas. 31), and *In re Mark,* 146 Mich. 714, we quoted with approval the language of Chief Justice Marshall in the trial of Burr (1 Burr's Trial, p. 252). We again quote it. He said:

"When a question is propounded (a question which the witness declines to answer upon the ground that it may tend to criminate him) it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. It follows necessarily, then, from this statement of things, that, if the question be of such a description that an answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say upon his oath that his answer would criminate himself, the court can demand no other testimony of the fact."

This disposes of the only question urged by the defendants in the court below and here. Other objections to the act were set out in the motion but were

not urged. Plaintiff has briefed them exhaustively and asks that we decide them now. It would not be in consonance with our practice to decide questions not urged in the court below or here. This statute has been in force nearly two years. It should be comparatively easy to get a case to this court in which we would have the benefits of briefs on both sides of the case and be able to dispose of the questions in the orderly course of procedure. Until the questions are properly before us, we must decline to decide them.

The decree will be reversed and the case remanded for further proceedings not inconsistent with this opinion. As the question involved is a public one, no costs will be allowed.

SHARPE, C. J., and BIRD, SNOW, STEERE, WIEST, CLARK, and MCDONALD, JJ., concurred.