DOLORES GABRIEL, Plaintiff-Appellee, v. COLUMBIA NATIONAL BANK OF CHICAGO, Trustee, *et al* ., Defendants-Appellants.

First District (5th Division)   No. 1—91—0282

Opinion filed April 10, 1992.

Katherine A. Williams, of Chicago, for appellants.

Frank & Levin, of Chicago, for appellee.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Dolores Gabriel (Gabriel) brought an action against her sister, defendant Melanie Payonk (Payonk), alleging fraud and seeking to reform a land trust. The land trustee, Columbia National Bank of Chicago, is not a party for the purposes of this appeal. The dispute arose from a land trust document assigning Gabriel's joint tenancy interest to her mother, Deana Jendricka (Jendricka), and Payonk as joint tenants.

Following are the pertinent facts. Jendricka died on October 19, 1989, survived by two daughters, Payonk and Gabriel. At the time of her death, Jendricka was living in a two-flat building located in Chicago, Illinois, with her daughter Payonk. This building is the subject

of litigation initiated by Gabriel in the chancery division of the circuit court of Cook County.

The real estate was originally held in joint tenancy by Jendricka and her late husband, George. When George died, his interest passed to Jendricka as his surviving spouse. According to Gabriel and Payonk, Jendricka deeded the property to them and they deeded the property into the land trust. However, this deed was never recorded, registered or found. Before Jendricka's death, an assignment of Gabriel's share of the beneficial interest back to Payonk and Jendricka in joint tenancy was executed. Thus, upon Jendricka's death, the entire interest passed to Payonk, excluding Gabriel.

Gabriel's verified complaint alleged that the assignment from Gabriel back to Jendricka and Payonk was forged by Payonk. In response to the verified complaint, Payonk filed a verified answer, and in response to the two paragraphs alleging that Payonk caused or participated in the forgery, Payonk invoked her privilege against self-incrimination as guaranteed by the fifth amendment of the Constitution of the United States and by article I, section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, §10).

Gabriel then moved for judgment on the pleadings maintaining that the invocation of the privilege was equivalent to no answer and was the same as admitting the allegations. This motion was briefed and argued, the trial court granted judgment on the pleadings, and further found that its order was final and appealable pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)).

The single issue presented on appeal is whether a defendant's invocation of the privilege against self-incrimination by verified answer in a civil case in response to a plaintiff's verified complaint alleging defendant's forgery is equivalent to an admission of those allegations thereby entitling plaintiff to judgment on the pleadings.

This precise issue has not been addressed by courts of review in this State. However, Federal and State courts of review in other jurisdictions have addressed this issue and Federal and State courts of review in Illinois have considered issues closely related to the one now before this court. For the reasons that follow, we reverse and remand.

■ The privilege against self-incrimination is available in civil matters as well as criminal matters. (*Lefkowitz v. Cunningham* (1977), 431 U.S. 801, 53 L. Ed. 2d 1, 97 S. Ct. 2132; *McCarthy v. Arndstein* (1924), 266 U.S. 34, 69 L. Ed. 158, 45 S. Ct. 16.) The privilege has been held to extend to a civil defendant, even if no criminal action is pending and the risk of criminal prosecution is remote. *10-Dix Build-*

*ing Corp. v. McDannel* (1985), 134 Ill. App. 3d 664, 480 N.E.2d 1212, citing *In re Master Key Litigation* (9th Cir. 1974), 507 F.2d 292; see also *In re Mid-Atlantic Toyota Antitrust Litigation* (D. Md. 1981), 92 F.R.D. 358.

The United States Supreme Court has extended the protection of the testimonial privilege to discovery. (*United States v. Kordel* (1970), 397 U.S. 1, 25 L. Ed. 2d 1, 90 S. Ct. 763.) A Federal court of appeals has reached a similar conclusion in *In re Folding Carton Antitrust Litigation* (7th Cir. 1979), 609 F.2d 867, and another has extended it to the pleading stage of a case as well. *In re Sterling-Harris Ford, Inc.* (7th Cir. 1963), 315 F.2d 277, *cert. denied sub nom. Silverstein v. Phelps* (1963), 375 U.S. 814, 11 L. Ed. 2d 50, 84 S. Ct. 46.

One of the first cases in which a State court of review extended the protection of the privilege against self-incrimination to an answer in a chancery case was *People ex rel. Moll v. Danziger* (1927), 238 Mich. 39, 213 N.W. 448. Since this case was decided before the United States Supreme Court had made the fifth amendment privilege against self-incrimination applicable to State court proceedings through the due process clause of the fourteenth amendment, the court applied the protection available through the Michigan Constitution.

Danziger was charged with a bill under a Michigan statute to abate a nuisance caused by the fact that certain premises he owned were being used for the purposes of lewdness, assignation and prostitution. The defendant filed a motion to dismiss on the ground that the statute was unconstitutional for various reasons. One of the reasons set forth was that the bill accused the defendant of the commission of a crime and sought to subject him to a penalty and forfeiture. Therefore, he contended that the statutory requirement compelling him to answer allegations admitting the commission of a crime or suffer a default on the pleadings rendered the act unconstitutional and void.

The trial court agreed with defendant's position and dismissed the bill. The Michigan Supreme Court, reversing on other grounds, reviewed the writings of legal scholars Pomeroy and Story, which enunciated the principle that a defendant in a discovery suit is never compelled to disclose facts which would tend to incriminate him or expose him to criminal punishment or prosecution. From that principle the court cited with approval the observation of a text writer that "the constitutional inhibition is directed not merely to the giving of oral testimony, but embraces as well the furnishing of evidence by other means than by word of mouth, the divulging, in short, of any fact which the accused has a right to keep secret. *** As defendant in a

penal action cannot be required to furnish evidence against himself, he cannot be required to file an answer specifically denying all the allegations of the petition." *Danziger*, 238 Mich. at 43, 213 N.W. at 449.

The court in its opinion cited numerous English and American cases supporting this conclusion, among them *Robson v. Doyle* (1901), 191 Ill. 566, 61 N.E. 435. In *Robson*, an action at law had been brought to recover a penalty under the Illinois criminal code prohibiting gambling in puts and calls on wheat. Plaintiff filed a bill for discovery to compel defendant to disclose his dealings in puts and calls with others. The suit was not for recovery of anything plaintiff had lost, but was a prosecution in a special action on the case for penalties for violation of the criminal law. The court held that equity will not aid actions penal in nature by compelling a defendant to disclose facts which would expose him to criminal punishment or prosecution, or to disclose any fact that might form a link in the chain of evidence establishing his liability to punishment, penalty or forfeiture. See also *Hayes v. Caldwell* (1848), 10 Ill. 33, 36 (where the supreme court answered defendant's argument that the effect of dismissing the writ of error will be to compel him to make discovery as to all allegations of the bill, although he may, by so doing, subject himself to prosecution for a criminal offense: "No such result can follow. He can insist upon his rights in this respect, as well as on his answer by demurrer. He can answer the allegations that have no such tendency, and as to those, the response to which may tend to incriminate him, he may claim his privilege and decline to answer; and the court, if satisfied that he cannot safely make the discovery, will certainly protect him in refusing to do so").

The court in *Danziger* cited *Robson* as a case "in line with the many other holdings that a defendant may not be required by his answer to state facts which will tend to [in]criminate himself." *Danziger*, 238 Mich. at 46, 213 N.W. at 450. See Annot. 52 A.L.R. 143 (1950).

*Danziger* also disapproved of a comment by the Alabama Supreme Court in *Ridge v. State ex rel. Tate* (1921), 206 Ala. 349, 89 So. 742, that the invocation of the privilege against self-incrimination in a defendant's answer to a complaint, because it was not a denial of the allegation, would normally result in a default judgment. The court stated: "This we do not approve. The assertion of a constitutional right should not deprive a party of his day in court." (*Danziger*, 238 Mich. at 50, 213 N.W. at 452.) In accord are *Sunley v. Badler* (1942), 33 N.Y.S.2d 642, and *John Manners & Co. v. Sohnen* (1954), 206

Misc. 845, 134 N.Y.S.2d 162, in which the New York Supreme Court held that a verified pleading is testimony within the scope of the privilege against self-incrimination and excusing a defendant from filing a verified answer to a verified complaint where the party pleading would be privileged from testifying as a witness concerning an allegation or denial in a pleading. See also *Galante v. Steel City National Bank* (1978), 66 Ill. App. 3d 476, 384 N.E.2d 57 (where counterdefendants refused to answer questions at their depositions, invoking the fifth amendment privilege against self-incrimination, the trial court erred in ordering a default judgment against them because they were entitled to a question-by-question determination as to whether answers could possibly have tended to incriminate them); *North River Insurance Co. v. Stefanou* (4th Cir. 1987), 831 F.2d 484 (holding that the privilege against self-incrimination can be asserted in a civil case, but the claim must be made as to specific allegations in the complaint so the trial court may ascertain whether the privilege has been properly invoked).

A comment in the 1968 volume of University of Illinois Law Forum provides a synopsis of the scope of the privilege against self-incrimination in civil litigation. It observed that in addition to testimony at trial and statements at pretrial discovery, the pleadings of the parties are protected by the privilege against self-incrimination. However, it noted that problems arise when a defendant asserts the privilege in his answer. Some courts require only that the defendant notify the court of his claim and allow him to answer without responding to the objectionable paragraphs. The unanswered allegations are taken to be a denial. Other courts, on the contrary, have held that the defendant is not relieved of admitting or denying the allegations of the complaint, so silence is deemed an admission. The latter approach substantially impairs the defendant's privilege against self-incrimination. The commentator opines that the best solution to the problem appears to be that adopted in New York where, by statute, the defendant is allowed to file an unverified answer denying matters to which his privilege pertains. This has the effect of a verified denial and requires plaintiff to prove the allegations in his complaint. Comment, *The Privilage Against Self-Incrimination in Civil Litigation*, 1968 U. Ill. L. Forum 75, 77-78.

Although, as mentioned previously, the reviewing courts of this State have not addressed the precise issue presented by this case, it was addressed by the United States Court of Appeals for the Seventh Circuit in *National Acceptance Co. of America v. Bathalter* (7th Cir. 1983), 705 F.2d 924, in construing Federal Rule of Civil Procedure 8.

Plaintiff (NAC) brought a civil action against defendant (Bathalter) alleging conspiracy to extend loans to companies in which he had an interest, to extend loans to noncreditworthy companies, and to take kickbacks on the loans. Eight million dollars in damages were requested. Bathalter admitted the jurisdictional allegations and further stated that the subject matter of the complaint had been the basis for at least one grand jury investigation. Exercising his rights under the fifth amendment to the United States Constitution, Bathalter declined to answer those allegations on the ground that his answers might tend to incriminate him. He further requested that his declination have the same effect under Rule 8(d) as a specific denial of the allegations. NAC moved to strike the answer for failure to comply with the pleading requirements of Rules 8(b) and 8(d). In the alternative, NAC moved for judgment on the pleadings because as Bathalter had neither admitted, denied nor pled lack of knowledge pursuant to the requirements of Rule 8(b), those allegations were deemed admitted pursuant to Rule 8(d) leaving no unresolved issues. The district court accepted NAC's argument, granted it judgment on the pleadings and awarded damages in excess of $8 million.

The Seventh Circuit Court of Appeals conceded that a literal reading of Rule 8 would mandate the result reached by the district court. However, it perceived the issue before it to be whether the literal language of Rule 8 must yield in order to protect Bathalter's constitutional right to avoid self-incrimination.

The court noted that the Supreme Court had addressed the applicability of the privilege to noncriminal matters at least six times. In *Spevack v. Klein* (1967), 385 U.S. 511, 17 L. Ed. 2d 574, 87 S. Ct. 625, the Court held that an attorney could not be disbarred as a sanction for invoking the fifth amendment privilege. In its companion case of *Garrity v. New Jersey* (1967), 385 U.S. 493, 17 L. Ed. 2d 562, 87 S. Ct. 616, the Supreme Court held that a policeman's testimony at a disciplinary proceeding, compelled by threat of discharge, could not be used in a subsequent criminal proceeding because it constituted a penalty making the assertion of the fifth amendment privilege too costly. The holdings of *Spevack* and *Garrity* were reaffirmed in *Gardner v. Broderick* (1968), 392 U.S. 273, 20 L. Ed. 2d 1082, 88 S. Ct. 1913, and *Uniformed Sanitation Men Association v. Commissioner of Sanitation* (1968), 392 U.S. 280, 20 L. Ed. 2d 1089, 88 S. Ct. 1917, where the Court held unlawful the discharge of two public employees for refusing to waive the privilege when called to testify during official investigations. Two years later the Supreme Court in *Lefkowitz v. Turley* (1973), 414 U.S. 70, 38 L. Ed. 2d 274, 94 S. Ct. 316, again

affirmed that the threat of adverse consequences cannot be used to compel a waiver of the fifth amendment privilege. The Court declared unconstitutional a State statute that cancelled the existing contracts of two State contractors and barred them from any further State business for five years for their refusal to sign immunity waivers when called before a grand jury investigating charges of bribery and larceny in public contracts. The Court held this coercion to be indistinguishable from the threat of unemployment involved in the *Spevack-Garrity* line of cases.

The Seventh Circuit Court of Appeals noted in *Bathalter* that NAC was not in a position to offer immunity if he answered the allegations of the complaint. As a result of asserting the constitutional privilege, *Bathalter* had an $8.6 million judgment entered without trial or even the evidentiary showing required for summary judgment.

It observed that the only other case in which a Federal court had directly addressed this issue was *de Antonio v. Solomon* (Mass. 1967), 42 F.R.D. 320. In *de Antonio* the defendant admitted jurisdiction but refused to respond to the remaining allegations on the ground of fifth amendment privilege. The plaintiff moved for default judgment contending that the defendant failed to comply with the pleading requirements of Rule 8. Although the district court initially ruled for plaintiff (*de Antonio v. Solomon* (Mass. 1966), 41 F.R.D. 447), it later reconsidered its decision in light of the intervening rulings in *Spevack* and *Garrity*. (*de Antonio*, 42 F.R.D. 320.) Its reconsidered opinion stated:

> "Although Rule 8(d), Fed.R.Civ.P., provides that averments in a complaint are admitted when not denied, the defendant's right to assert his privilege against self-incrimination would be considerably watered down if his failure to explicitly deny averments might result in a summary judgment against him. [Citation.] Henceforth in these proceedings the defendant's claims of the privilege in his amended answer will be treated as equivalent to specific denials." *de Antonio*, 42 F.R.D. at 322.

NAC citing *Baxter v. Palmigiano* (1976), 425 U.S. 308, 47 L. Ed. 2d 810, 96 S. Ct. 1551, asserted that the judgment entered against Bathalter was entered not because he claimed the privilege but because he failed to respond to the allegations of the complaint and therefore he was deemed to have admitted them. The court of appeals acknowledged that the fifth amendment does not prohibit an adverse inference against civil litigants who refuse to testify in response to probative evidence offered against them. The court determined, however, that this principle was not dispositive because the question in *Bathalter* was whether this inference is available at the pleading

stage. In answering this question negatively the court observed that "a complaint *** is not evidence. [It] contains only averments and claims which, unless admitted, must be proved in order to support a judgment." (*Bathalter*, 705 F.2d at 930.) It concluded by stating, "It is our best judgment, in the light of *Baxter*, that even in a civil case, a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage. We conclude that defendant's claim of privilege should not have been deemed an admission, and that plaintiff should have been put to its proof, either by way of evidentiary support for a motion for summary judgment or at trial." *Bathalter*, 705 F.2d at 932. Accord *Kramer v. Levitt* (1989), 79 Md. App. 575, 558 A.2d 760; *State ex rel. Lieberman v. Goldman* (Mo. App. 1989), 781 S.W.2d 802.

Gabriel relies on six cases in support of her contention that the trial court was correct in granting her judgment on the pleadings for Payonk's invocation of her privilege against self-incrimination in her answer to allegations of forgery in the complaint.

None is dispositive of the issue before us. In *Douglas v. Daniels* (1978), 64 Ill. App. 3d 1022, 382 N.E.2d 90, evidence was suppressed in a criminal case because it was obtained under threat of loss of employment in violation of the privilege against self-incrimination. It was held admissible against a police officer in an administrative proceeding, resulting in his discharge from the force, on the ground that such a proceeding was not a criminal prosecution, and such ancillary use was not a violation of the fifth amendment privilege. This case does not address the issue of whether a defendant in a civil case should suffer a default judgment on the pleadings for invoking the privilege against self-incrimination. *Childs v. McCord* (D. Md. 1976), 420 F. Supp. 428, similar to *Douglas*, is also, therefore, not on point.

Similarly, Gabriel's reliance on *Baxter* is also misplaced as that case was concerned with adverse inferences that might be drawn by the finder of fact at a prison disciplinary hearing from an inmate's invocation of the privilege in response to charges of misconduct. This case will not be further commented upon as it was more fully discussed in prior portions of this opinion.

*United States v. Robinson* (1988), 485 U.S. 25, 99 L. Ed. 2d 23, 108 S. Ct. 864, and *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229, were both criminal cases which discussed the extent to which the government is permitted to comment at trial upon the defendant's invocation of his fifth amendment privilege to decline to testify in his own behalf. The rulings in these cases are not

germane to a determination of the consequences to a defendant in a civil case of invoking the privilege in an answer to a complaint.

The final case cited and relied upon by Gabriel, *Kramer v. Levitt* (1989), 79 Md. App. 575, 558 A.2d 760, in fact supports Payonk's position in this appeal. In *Kramer*, defendant responded to plaintiff's request for admissions, interrogatories and motions to produce documents by invoking his privilege against self-incrimination. The trial judge permitted the defendant to invoke his privilege but ruled that plaintiff's requests for admission would be deemed admitted by defendant and read to the jury, which returned a substantial verdict against him.

On appeal, the reviewing court held that the trial judge erred in allowing plaintiff's requests for admissions to be deemed admitted by defendant and read to the jury. It cited with approval the holding in *Bathalter* and further observed that *Baxter* requires that even in a civil case "a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage." *Kramer*, 79 Md. App. at 580, 558 A.2d at 766.

■ We deem the ruling in *Bathalter* and its construction of the pleading requirements of Federal Rule of Civil Procedure 8 read in light of the fifth amendment privilege against self-incrimination to be dispositive. Section 2—610 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—610) covering the pleading requirements in answers is very similar in language to that contained in Federal Rule of Civil Procedure 8. Also, the privilege against self-incrimination contained in article I, section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, §10) is similar in import and intended to confer similar protections as those afforded by the fifth amendment to the United States Constitution. Therefore, we hold that it is a violation of Payonk's State constitutional privilege against self-incrimination to grant judgment on the pleadings for defendant's invocation of the privilege in her answer to allegations of forgery contained in Gabriel's complaint. Accordingly, we reverse the judgment of the trial court and remand for further proceedings in accord with the views expressed herein.

Reversed and remanded.

LORENZ and MURRAY, JJ., concur.