STATE, *ex rel.* WAYNE PROSECUTING ATTORNEY, *v.* MARTIN.

1. GAMING—ABATEMENT OF NUISANCE—AUTOMOBILES—FINDING OF COURT.

In suit to abate a nuisance, claimed to have been committed by defendant in owning and operating an automobile for purposes of gambling, defendant's own testimony was sufficient evidence to sustain trial court's finding that defendant had used the automobile in question on the day of his arrest and the preceding day for such illegal purpose (2 Comp. Laws 1929, § 9093 *et seq.*).

2. ARREST—WITHOUT WARRANT—POLICEMEN—BREACH OF THE PEACE —FELONY.

Except for a breach of the peace committed in his presence, or when he has a reasonable ground to believe that the person arrested is a felon, or is about to commit a felony, a police officer has no authority to arrest without a warrant.

3. SAME—REASONABLE GROUNDS FOR ARREST WITHOUT WARRANT.

Officers who had received detailed information as to man and car he drove in connection with the perpetration of a felony and who verified such information by their own observation and were thwarted by defendant's endeavor to hide the nature of his business when questioned had reasonable grounds to believe defendant guilty of the felony indicated and were justified in making the arrest without a warrant.

4. GAMING—ABATEMENT OF NUISANCE—AUTOMOBILES.

In suit to abate a nuisance arising from defendant's ownership, maintenance and operation of a car for the purposes of gambling, decree enjoining the nuisance and ordering sale of the automobile was appropriately entered.

5. SAME—CONTEMPT—INJUNCTION—RETENTION OF DEFENDANT'S PROPERTY.

A decree in suit to abate as a nuisance the ownership, maintenance and use of a car for the purposes of gambling may not retain property of defendant not shown to have been used for gambling except where defendant is found guilty of contempt by reason of disobedience to an injunctive order (2 Comp. Laws 1929, § 9103).

6. SAME—EVIDENCE—ATTORNEYS' FEES—STATUTORY COSTS.

Costs assessable under section of act relating to abatement of nuisances cover attorneys' fees and statutory costs and where no showing is made justifying retention of $500 for such purpose in decree entered, such provision is reversed, and all of defendant's money taken upon his arrest, less costs taxed in circuit court, is ordered returned to him, where it is not shown such money was used in gambling (2 Comp. Laws 1929, § 9102).

7. APPEAL AND ERROR—MODIFICATION OF DECREE—COSTS.

Where decree in suit to abate as a nuisance, the ownership, maintenance and operation of a car for the purposes of gambling, is modified and case remanded for proper determination of costs, the decree is entered in the Supreme Court (2 Comp. Laws 1929, § 9102).

8. COSTS—ABATEMENT OF NUISANCE—EACH PARTY PREVAILING IN
PART ON APPEAL.

 No costs are awarded on appeal in suit to abate a nuisance where
 each party prevails in part in the Supreme Court (2 Comp.
 Laws 1929, § 9093 *et seq.*).

Appeal from Wayne; Toms (Robert M.), J. Submitted January 11, 1946. (Docket No. 73, Calendar No. 43,283.) Decided April 1, 1946.

Bill by State of Michigan, *ex rel.* William E. Dowling, Prosecuting Attorney of Wayne County, against Andrew Martin and another to have an automobile declared a nuisance and sold. Decree for plaintiff. Defendant Martin appeals. Affirmed in part, reversed in part and remanded for taxation of costs.

*Gerald K. O'Brien,* Prosecuting Attorney, and *Michael A. Guest,* Assistant Prosecuting Attorney, for plaintiff.

*Buckingham, Piggins & Rehn,* for defendant.

REID, J. The bill of chancery in this case was filed to abate a nuisance claimed to have been committed by defendants, namely, owning, maintaining and operating the automobile described in the bill of complaint for the purposes of gambling. Defendant Andrew Martin's brief recites that he owned the automobile in question but the title stood in the name of the two defendants. This suit was brought under Act No. 389, Pub. Acts 1925 (2 Comp. Laws 1929, § 9093 *et seq.* [Stat. Ann. § 18.901 *et seq.*]), for a determination that the automobile of defendants is a nuisance, and for sale of the automobile. The trial court found the nuisance proven, ordered the automobile sold, and required the retention of $500 of

the seized funds of defendant Andrew Martin as costs. Defendant Almarie Blackburn does not appeal. Defendant Andrew Martin appeals from the decree and will hereinafter be referred to as defendant.

Defendant claims that his arrest and the subsequent search and seizure of his car was illegal, that defendant's motion for suppression of evidence should have been granted, that the trial court was in error in holding the automobile to be a nuisance, ordering its sale, and further, in taxing costs in the sum of $500 payable out of the personal funds of defendant.

On February 25, 1944, senior inspector of police Lawrence Kennedy was in charge of the vice squad, the duties of the vice squad being suppression of vice, gambling and liquor violations in the city of Detroit. He testified:

"Previous to February 25, 1944, I received a telephone call that there was a man engaged in the number business at the plant at Riopelle and Erskine, in the city of Detroit. A colored man, I don't recall whether they gave me the name or not; they could have, but I wouldn't say for sure they did. They stated he was picking up numbers in this plant and at a certain time—they gave an hour—I believe between 12 and 1 or 12:30 and 1:30 that an automobile would come out of this plant and that would be the man in there that took the numbers of the entire plant. They gave us the license number AP-2552, Buick sedan, and I sent patrolman May, who was in the charge of the east side gambling crew, to * * * (investigate) and take whatever action was necessary in this complaint. I refer to the garbage plant, I mean the garbage disposal plant that is operated by the city of Detroit."

Upon receiving the telephone call, Kennedy turned the matter over to officer George May for investiga-

tion, with instructions to him to take such action as seemed proper. On the day in question, February 25, 1944, May and his fellow officers waited in a car near the garbage disposal plant, watching for the Buick sedan to leave the plant. They saw the defendant drive the car from the plant during the noon hour, followed the car a few blocks, and then stopped defendant for questioning. They would have stopped him a block away if they reasonably could. Defendant was not violating any traffic ordinances or regulations. Obviously the complaint by telephone was the sole cause for the officers stopping defendant. Officer May testified as follows:

"*Q.* Did you get into the car and talk to him at all?

"*A.* No, sir. I was on the outside—we were all on the outside.

"*Q.* Who did most of the talking?

"*A.* I did.

"*Q.* Did you tell him he might as well tell you everything, you had all the information on him?

"*A.* I asked him a few questions and the questions weren't satisfactory, so I told him we would take him—we would talk to Inspector Lawrence, he wanted to see him. * * *

"*Q.* What answers did he make to your questions?

"*A.* The questions I asked him, he just told me one time—he told me I would have to find out.

"*Q.* What did you ask him?

"*A.* I asked him what other business he was in. He said I would have to find out. That was enough for me to take him into the station, talked to the inspector.

"*Q.* When you got him down there, you and two other officers—

"*A.* Yes, sir.

"*Q.* —what did he say? 'Here, boys, here is my property.'

"*A.* We got into the station and we talked. He said, 'I might as well hand it over to you,' and he handed me the black leather billfold."

Defendant testified that he had been using the car on the day preceding his arrest to meet the party named Rankowski to whom he turned in the tickets used in the gambling scheme. Defendant further testified:

"*Q.* Well, now, the day that you were arrested you were carrying tickets that had been turned in to you by several men. How many men had turned tickets in to you the day of your arrest?
"*A.* I would roughly estimate that at least 25."

Later on defendant testified:

"*Q.* Well, daily when you went to lunch you had to drive your automobile to deliver your numbers too?
"*A.* I didn't have to, no.
"*Q.* You didn't have to, but you usually did?
"*A.* No.
"*Q.* It was mostly convenient?
"*A.* No.
"*Q.* How long a period of time did you use the automobile?
"*A.* I would say I used the automobile half the time."

The testimony of defendant would of itself be a sufficient basis for the court's finding that defendant had used the automobile in question on the very day of his arrest and the preceding day for the illegal purposes claimed by plaintiff.

The parties by their briefs insist upon determination of the further point involved in this appeal, namely, whether evidence, gambling tickets, et cetera, was illegally obtained and should have been suppressed.

In *People* v. *Guertins,* 224 Mich. 8, we determined that information of unascertained reliability by telephone was insufficient as reasonable ground for belief that the person arrested was guilty of a felony.

Defendant cites *Cook* v. *Hastings,* 150 Mich. 289 (14 L. R. A. [N. S.] 1123, 13 Ann. Cas. 194), in which it was determined that the fact that the person arrested was found hiding behind a tree and when the officers questioned him, refused to state his name or business, was not sufficient ground for arresting defendant, who was suspected of having committed a *misdemeanor,* and in that case it was further said (p. 290):

"Except for a breach of the peace committed in his presence, or when he has a reasonable ground to believe that the person arrested is a felon, or is about to commit a felony, a police officer has no authority to arrest without a warrant."

All that the person arrested in that case had done in the presence of the officers was to hide behind a tree, which was no breach of the peace. The officers only believed him guilty of a misdemeanor and they had no authority to arrest him without a warrant, however reasonable their belief that he was the very prowler for whom they were searching.

In the instant case, defendant was suspected of having committed a *felony.* The officers had received detailed information as to defendant, that he was a colored man who would leave the reduction works at the noon hour in a particularly described car, the license number of which was stated, all of which the officers verified by their own observation, and when defendant was questioned, he refused to tell his business and told the officers they would have to find that out. When we consider the detailed information the officers had received and add to that

the verification by their own observation of defendant and of his car and the car license, and the further fact that the defendant tried to hide the nature of his business from the officers, we find that the officers had reasonable grounds to believe defendant guilty of the felony indicated and were justified in making the arrest. See *People* v. *Ward*, 226 Mich. 45, 50.

The decree enjoining the nuisance and ordering sale of the automobile was appropriately entered.

We are still confronted with the disposition made by the trial court of the money found on the person of the defendant in the amount of $1,874.39. The testimony was insufficient to sustain the plaintiff's claim that this money was used in gambling. The court ordered it returned to the defendant, but the decree withheld from defendant $500 as costs, apparently under the provisions of section 11 of the act,* which however applies only in cases of defendant being found guilty of contempt by reason of disobedience of an injunctive order. There is no showing that defendant disobeyed any injunction. The costs which may be assessed under section 10 of the act † cover attorneys' fees and statutory costs. No showing is made in the record justifying the retention of $500 as costs, which part of the decree we reverse. The entire sum, $1,874.39, less the amount of costs taxed in circuit court, should be returned to defendant. In all other particulars the decree appealed from is affirmed.

The matter is remanded to the trial court for proper determination of costs under Act No. 389, § 10, Pub. Acts 1925 (2 Comp. Laws 1929, § 9102

---

* 2 Comp. Laws 1929, § 9103 (Stat. Ann. § 18.911).—Reporter.

† 2 Comp. Laws 1929, § 9102 (Stat. Ann. § 18.910).—Reporter.

[Stat. Ann. § 18.910]).   A decree will be entered in this court in accordance with this opinion.   Each party having prevailed in part in this court, no costs are awarded on this appeal.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, NORTH, and STARR, JJ., concurred.