STATE OF MICHIGAN, *ex rel* WAYNE PROSECUTING
ATTORNEY, v MOCERI

OPINION OF THE COURT

1. TRIAL—TACTICS—CIVIL ACTION—DEFENDANT TESTIFYING—SELF-IN-
CRIMINATION.

Good trial tactics would often compel an attorney to advise his
client not to testify at all in a civil suit because of the danger of
discovery, self-incrimination, and subsequent impeachment at a
criminal trial.

2. NUISANCE—PUBLIC NUISANCE—DEFENDANT TESTIFYING—SELF-IN-
CRIMINATION—CONTINUANCE.

One solution which will both protect the state's statutory right to
seize property used for certain illegal purposes as a public
nuisance and to protect the defendant who does not wish to
risk incriminating himself by testifying in defense of a civil suit
to seize the property is to delay the civil suit by a continuance
until after criminal proceedings which arose from the same
facts are completed (MCLA 600.3825; GCR 1963, 503.1).

3. NUISANCE — PUBLIC NUISANCE — ABATEMENT — CONTINUANCE —
EQUITY.

The decision to proceed with or delay a civil suit to abate as a
public nuisance the use of property for certain illegal purposes
until after a criminal trial on the same facts is completed must
be tested against the equity and necessity for proceeding with
the civil action under the circumstances of a given case (MCLA
600.3801 *et seq.*).

4. NUISANCE — PUBLIC NUISANCE — AUTOMOBILES — EVIDENCE —
GAMBLING.

A trial court finding that an automobile was a public nuisance
because used for gambling activities, and an order of abatement
directing that it be sold at public auction, was not supported by

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 257, 267, 449.
[2, 3, 5] 21 Am Jur 2d, Criminal Law § 342.
[4] 58 Am Jur 2d, Nuisances § 195 *et seq.*

a preponderance of the evidence where there was no credible evidence on the record connecting the vehicle with gambling activities; on remand, the trial court was directed to order the gross proceeds from the vehicle sale paid to the registered owner, less any amount due the lienholder on the sale day, which remains unpaid; the amount due the lienholder on the sale day of the vehicle to be paid to the lienholder; and the registered owner further shall have a cause of action remaining for the difference between the gross proceeds from the vehicle sale and the market value of the vehicle on the sale day (MCLA 600.3825).

CONCURRENCE BY O'HARA, J.

5. CONSTITUTIONAL LAW—SELF-INCRIMINATION—CIVIL SUIT—CRIMINAL PROCEEDINGS—STAY.

*The constitutional provision that a person shall not be compelled to be a witness against himself has not been extended as far as to require that a civil suit against a defendant be stayed until a criminal proceeding against the defendant based on the same facts is concluded (Sternberg v State Bar of Michigan, 384 Mich 588 [1971]).*

Appeal from Wayne, Thomas J. Foley, J. Submitted Division 1 January 11, 1973, at Detroit. (Docket No. 11663.) Decided May 22, 1973.

Complaint by the State of Michigan, on the relation of William L. Cahalan, Prosecuting Attorney of Wayne County, against Salvatore Moceri, Sandra Moceri, Joseph A. Viviano, Nicolo Loiacano, David S. Jenio, Emma Ganey, Quillan Smith, Barbara Thompkins, Lilia Batch, Matthew Harris, Sebastian C. Ventimiglia, Lucille M. Ventimiglia, The Detroit Bank and Trust Company, National Bank of Detroit, and Servitor Credit Union, to abate a nuisance. Judgment for plaintiff. Defendants except the Detroit Bank and Trust Company, National Bank of Detroit, and Servitor Credit Union appeal. Reversed as to Nicolo Loiacano and affirmed as to the others, and remanded with instructions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Armand D. Bove* and *Philip J. Caruso,* for defendants except the Detroit Bank and Trust Company, National Bank of Detroit, and Servitor Credit Union.

Before: LESINSKI, C. J., and T. M. BURNS and O'HARA,* JJ.

LESINSKI, C. J. Defendants were arrested on February 4, 1971 on gambling charges. Their automobiles were subsequently confiscated as *nuisances* and sold at public auction, pursuant to MCLA 600.3825; MSA 27A.3825. They appeal by right the order of abatement, under which their automobiles were sold.

Defendants allege that the proceedings confiscating their automobiles amounted to a deprivation of due process of law in that the defendants, by exercising certain constitutional rights, such as the privilege against self-incrimination, could not properly defend in this civil suit. In the preliminary argument prior to the taking of proofs, defendants' attorney advised the court that defendants could not take the stand to refute the state's allegations because of criminal charges pending against them arising out of the same set of facts involved in the matter then before the court. Defendants therefore faced a choice of the possible loss of their automobiles or a cross-examination by the prosecution on some of the same facts to be

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

proven at their criminal trials. Defendants' testimony in this civil suit would have aided the prosecutor in pretrial discovery for the pending criminal suit. Defendants characterize this as deprivation of due process.

The state cites *People ex rel Moll v Danziger,* 238 Mich 39 (1927), as dispositive of the issue at bar. In that case the state filed under the same act to abate a nuisance alleging that the premises were being used for prostitution. The trial court dismissed the suit on the grounds that the statute was unconstitutional under these facts because it forced defendant either to answer the allegations, which might tend to incriminate him, or to suffer a forfeiture. The Michigan Supreme Court, explicitly denying that the provisions of the Federal Constitution against compulsory self-incrimination had applicability to state court proceedings, reversed the trial court saying at page 48:

"The constitutional rights of the defendant must be protected, but the constitutional rights of the plaintiff to his day in court must be likewise protected."[1]

The Court stated that to require dismissal here would deprive the equity court of powers it had had for centuries to grant civil relief when the same facts amounted to a crime. The defendant's remedy was to assert his state constitutional rights

[1] The Michigan Constitution of 1908 contained a provision similar to that contained in the Federal Constitution. Const 1908, art 2, § 16 provided that no person shall be compelled in a criminal case to be a witness against himself, nor be deprived of life, liberty, or property without due process of law. *People ex rel Moll v Danziger,* 238 Mich 39 (1927), was decided in the light of the this provision. The Michigan Constitution of 1963 contains a similar provision under Const 1963, art 1, § 17. Since *Moll* was decided, the Fifth Amendment has been found applicable to the states. The United States Supreme Court has held that a person cannot be penalized for exercising his Fifth Amendment rights. *Spevack v Klein,* 385 US 511; 87 S Ct 625; 17 L Ed 2d 574 (1967).

against self-incrimination where appropriate and suffer the civil consequences.

The *Moll* case disposes of the due process argument, but defendants' position is not necessarily so narrow. The obvious problem is that this approach allows the state to commence both the civil and criminal action against a defendant based on the same facts—as was done in the case at bar. The defendant is then forced to choose between the possible loss of his property and the danger of self-incrimination. If he chooses to defend his property in the civil suit, the state gains valuable discovery[2] and statements from the defendant which could later be used against him at the criminal trial, at least for impeachment purposes. If he testifies on direct examination and claims his privilege against self-incrimination on cross-examination, most courts would strike his entire testimony. *Annest v Annest,* 49 Wash 2d 62; 298 P2d 483; 4 ALR3d 549 (1956). If defendant chooses not to testify in the civil suit, as most attorneys would advise him to do, he faces the possible loss of his property. Defendant is thus in a difficult position.

The owners of the vehicles, who were defendants in the criminal case, did not specifically exercise their Fifth Amendment right in this case; they merely did not testify in defense of the civil suit. In reality the strongest defense in a situation like this is for a defendant to take the stand and testify that he was not involved in a gambling operation or that he did not use his car in this operation. He thereby opens himself to thorough cross-examination by the prosecutor—here the same prosecutor who was conducting the criminal action against the defendants. A defendant, not wanting to risk incriminating himself, remains silent.

---

[2] If the civil suit were brought solely for discovery purposes, it would be dismissed. *Moll, supra.* This is, however, difficult to prove.

The prosecution argues that the proper place to raise the Fifth Amendment objection is not in a civil suit but during the criminal proceeding, when a statement given during the civil suit is introduced into evidence. We do not agree. Good trial tactics would often compel an attorney to advise his client not to testify at all in the civil suit because of the danger of discovery, self-incrimination and subsequent impeachment at a criminal trial.

We do not question the state's constitutional right to maintain this civil action. *Moll* settled this issue. We are concerned, however, with protecting a defendant in such a situation. One solution which will both protect the state's statutory right to seize property as a nuisance and to protect the defendant who does not wish to risk incriminating himself is to delay the civil suit until after the criminal proceedings are completed.

In an analogous factual situation the United States Supreme Court suggested a similar solution. In *United States v Kordel,* 397 US 1, 8, 9; 90 S Ct 763, 768; 25 L Ed 2d 1, 8, 9 (1970), defendant answered interrogatories in a civil suit being pursued by the Food and Drug Administration against defendant's corporation. Defendant objected to the use of these answers in the subsequent criminal prosecution against him. The Supreme Court rejected defendant's arguments on the ground that defendant had not ever exercised his Fifth Amendment privilege to remain silent. Additionally, it did not violate due process for the government to prosecute both the civil and criminal suits against defendant for the same actions—thus obtaining discovery. In reaching this decision the Court said:

"The respondents press upon us the situation where

no one can answer the interrogatories addressed to the
corporation without subjecting himself to a 'real and
appreciable' risk of self-incrimination. For present pur-·
poses we may assume that in such a case the appropri-
ate remedy would be a protective order under Rule
30(b), postponing civil discovery until termination of the
criminal action."

Defendants' remedy here was to seek a continu-
ance of the civil matter until the criminal matter
was resolved. However, defendants did not specifi-
cally request a continuance pursuant to GCR 1963,
503.1. The defendants' attorney's statement to the
court prior to commencement of proofs in the suit
revealed the problems the defense faced; however,
no motion was made for continuance.

*"Mr. Caruso [defense attorney]:* If the court please,
before proofs are taken I would like to state this. In
addition to what I have previously stated, in prepara-
tion for this case we haven't devoted the time we
should have due to a misunderstanding. If the court
please, it would be extremely difficult for Mr. Bove, for
me, or any other lawyer, for that matter, to properly
defend this matter for this reason: that the criminal
matter against these defendants has only proceeded to
the stage of a complaint and warrant. An examination
hasn't been conducted. Now we have, as the court has
indicated, a factual situation. Now, there is a criminal
matter pending in reference to the defendants, and they
couldn't possibly at this time get on the stand and
testify, and, Your Honor, it is needless for me to state
the reason for it. It is very apparent.

"So we are put in a situation here where we are
absolutely helpless legalistically speaking to defend
this. Had the criminal matter been disposed of we
might have a different situation. The doctrine—well,
the Fifth Amendment, perhaps, does not apply, but
being a factual situation, should we, let us say—let us
assume we will proceed at this time, and assume fur-
ther that we wish to question the facts as to whether it
was gambling paraphernalia or not, whether one of the

defendants used the automobile or not, it would be highly prejudicial to one of these defendants to get on the stand and testify and be subjected to cross examination by Mr. Nolan."

We find that the court did not abuse its discretion in not granting a continuance *sua sponte* based on the statement made by counsel.

We do not hold that a trial court must in every instance delay a civil abatement suit under MCLA 600.3801, *et seq.;* MSA 27A.3801, *et seq.* until after the criminal trial on the same facts is completed.[3] The decision to proceed with or delay a civil abatement suit must be tested against the equity and necessity for proceeding with the civil action under the circumstances of a given case.

Defendants next argue that the findings of the trial court that the seven vehicles were "public nuisances" is not supported by a preponderance of the evidence. We have examined the record of evidence in this cause and conclude that it is adequate to support the findings of the trial court with respect to six of the seven vehicles involved. With respect to the seventh vehicle, a 1968 Oldsmobile owned by Nicolo Loiacano, we conclude that the findings of the trial court are not supported by the evidence. There is no credible evidence on the record connecting this vehicle with gambling activities. For this reason we reverse the decision of the trial court as to the 1968 Oldsmobile, vehicle number 384-398-M-258790 registered in the name of Nicolo Loiacano.

On remand the trial court shall order the gross proceeds from the sale of this vehicle paid to the registered owner, less any amount due the lienholder on the day of the sale, which remains unpaid. The amount due the lienholder on the day

---

[3] *See Sternberg v State Bar of Michigan,* 384 Mich 588 (1971).

of the sale of the vehicle shall be paid to the lienholder. The registered owner further shall have a cause of action remaining for the difference between the gross proceeds from the sale of the vehicle and the market value of said vehicle on the day of sale.

Affirmed in part and reversed in part. No costs, a public question being involved.

T. M. Burns, J., concurred.

O'Hara, J. *(concurring in result)*. I concur in the result reached by the Chief Judge.

I rest my concurrence upon the holding in *Sternberg v State Bar of Michigan,* 384 Mich 588 (1971), cited by the Chief Judge in footnote 3 of his opinion.