*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF YPSILANTI,

       Plaintiff-Appellee,

v

MOUHANAD DAHABRA and JAMILL DIONTEE
JACKSON,

       Defendants,

and

LV JACKSON, JR.,

       Defendant-Appellant.

FOR PUBLICATION
July 29, 2021
9:25 a.m.

No. 354427
Washtenaw Circuit Court
LC No. 20-000471-CZ

Before: FORT HOOD, P.J., and MARKEY and GLEICHER, JJ.

FORT HOOD, P.J.

      In this nuisance-abatement action, defendant[1] appeals as of right the order of the trial court declaring his home a public nuisance under MCL 600.3801, ordering him to vacate the premises, and ordering the property to be vacant or padlocked for a period of 90 days. Defendant contends that the trial court abused its discretion by denying his request for an adjournment to retain counsel and that the court erred by concluding that a public nuisance existed on the basis of a singular act and without evidence of "community blight." We agree that the court abused its discretion when it denied defendant's request for an adjournment. We further agree that the singular act alleged

---

[1] Defendants Mouhanad Dahabra (Mouhanad) and Jamill Diontee Jackson (Jackson) are not parties to this appeal. Accordingly, the use of defendant throughout is in reference only to LV Jackson, Jr.

by plaintiff was insufficient to establish an abatable nuisance under Michigan law. We reverse and remand.

## I. FACTUAL BACKGROUND

This action arises out of an incident where, around 3:00 a.m., approximately 35 gunshots were fired into the air outside defendant's home.[2] Plaintiff alleged below that the shots were fired either by defendant, Jackson,[3] an invitee on the premises that fled before the police arrived, or a combination of the three. Understandably, during the event, multiple neighbors called 911. After their arrival, police found shell casings on the ground outside the home. Defendant, Jackson, and defendant's three minor children were found inside. Defendant and Jackson were arrested. Plaintiff indicated below that charges of child neglect, careless use of a firearm, and use of a firearm while intoxicated were being sought against defendant; charges of careless use of a firearm and use of a firearm while intoxicated were being sought against Jackson. No additional information is contained in the lower court record regarding the charges.

Approximately one month after the incident, plaintiff filed a verified emergency petition seeking to declare the subject property a public nuisance pursuant to MCL 600.3801(g) (building used to facilitate armed violence in connection with the unlawful use of a firearm). Plaintiff sought to abate the nuisance by evicting defendant from the home and padlocking the home for a period of time. The trial court granted plaintiff a temporary restraining order on the basis of the emergency petition and ordered all of the defendants to show cause for their conduct. At the show cause hearing, defendant appeared and requested a one to two-week adjournment so that he could obtain counsel to better defend himself. The trial court did not respond to the request and instead granted plaintiff the full relief it requested. The court reasoned only as follows:

> [Plaintiff's counsel], I'm aware of [the] statute. I'm also aware the township does not invoke it frivolously. I agree with you. Under these circumstances you are entitled to the relief that you are requesting . . . .

The court did not otherwise make any findings of fact or balance any equitable considerations on the record.

Shortly thereafter, defendant was able to obtain counsel. Defendant's counsel moved to vacate the trial court's order on the basis that, among some other things, the single event was insufficient to constitute an abatable nuisance under the law. Defendant's counsel further argued that defendant was denied a meaningful opportunity to be heard in violation of his due process rights. Without directly addressing these issues, the trial court denied the motion. Defendant now appeals to this court.

## II. DEFENDANT'S REQUEST FOR AN ADJOURNMENT

---

[2] Defendant was a lessee at the home. Dahabra was named in the case as the homeowner.

[3] Jackson is defendant's adult son and does not reside at the home in question.

Defendant first contends that the trial court abused its discretion by denying him an adjournment that would have allowed him more time to obtain legal counsel. Relatedly, defendant argues that he was denied a meaningful opportunity to be heard. We agree.

We review a trial court's decision regarding a motion for an adjournment or continuance for an abuse of discretion. *Soumis v Soumis*, 218 Mich App 27, 32; 553 NW2d 619 (1996). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

"A motion for an adjournment must be based on good cause, and a court, in its discretion, may grant an adjournment to promote the cause of justice." *Soumis*, 218 Mich App at 32 (quotation marks and citation omitted). See also MCR 2.503(B)(1) and (D)(1) (indicating that a court may, in its discretion, grant a motion for an adjournment on the basis of good cause and in order to promote the cause of justice). We have held before that to establish good cause in the context of a motion for an adjournment a party must show "a legally sufficient or substantial reason." *In re Utera*, 281 Mich App 1, 11; 761 NW2d 253 (2008) (quotation marks and citation omitted). In other contexts, our Supreme Court has defined the term as meaning a "satisfactory, sound or valid reason." *People v Buie*, 491 Mich 294, 319; 817 NW2d 33 (2012) (quotation marks and citation omitted).

Here, defendant provided a legally sufficient, substantial reason to seek an adjournment. It was not disputed that defendant was an impoverished individual who thereby might have some difficultly expeditiously obtaining counsel for a civil defense. At the show cause hearing, defendant indicated that he had spoken with an attorney but had not been able to yet retain that attorney. Defendant requested a one to two-week adjournment for that reason. Notably, when defendant did eventually obtain counsel for postjudgment relief, he unsurprisingly obtained the same attorney that he had spoken with before the show cause hearing but had not yet been able to retain. That attorney was also representing defendant in the related criminal case. The attorney indicated that defendant had paid him "a little money" for representation in the criminal case, but continued to owe money for that case. Suffice it to say, although his intent to do so was clear,[4] defendant's financial status was clearly an issue when it came to expeditiously retaining counsel. It is also noteworthy that this all happened during the height of the Covid-19 pandemic, which could have further impacted defendant's ability to retain counsel.

---

[4] Plaintiff contends that defendant did not establish good cause for the adjournment because he did not explicitly "commit" to retaining an attorney at the show cause hearing. This argument is unavailing. Defendant sought an adjournment to obtain legal consultation in order to better defend himself, and whether he actually intended to retain an attorney has no bearing on the fact that he had sound reason to seek an adjournment to obtain assistance—be it actually hiring an attorney or further consulting one. Moreover, plaintiff's argument is one of semantics. Yet, a full reading of defendant's statement at the show cause hearing leaves the indubitable impression that defendant specifically sought to *retain* counsel—a specific attorney, in fact—for his defense. That defendant did, in fact, retain that attorney shortly following the hearing only further evidences the same.

In addition, the significant interests defendant had at stake in this case cannot be understated. Defendant indicated that he is the sole surviving parent and caregiver to his three minor children, all of whom lived with him at the subject property. Defendant indicated that he had lived there for several years, and that he had previously lived in a shelter before moving to the subject property and establishing a home for his children. Defendant noted that it was his first actual home since his wife died approximately five years ago, and continued: "This is the only place my kids can really call home. This is a safe place for my kids. And it's a safe place for the neighborhood." Defendant noted that he had never had an incident at the house before, and that, if necessary, he would bar Jackson from visiting if it meant that he could remain in the home with his children.[5] The trial court did not address defendant's concerns whatsoever, and indeed, there is no indication from the lower court record that they were truly considered.[6]

We also note defendant's argument that the existence of his ongoing criminal case tended to support the necessity of an adjournment. We agree. In *State ex rel Cahalan v Moceri*, 47 Mich App 116, 121; 209 NW2d 263 (1973),[7] we noted that defendants subject to both civil nuisance abatement cases and criminal charges related to the same conduct are at a disadvantage in terms of mounting a defense in the civil case because doing so might incriminate them in the criminal case. We stated:

> We are concerned . . . with protecting a defendant in such a situation. One solution which will both protect the state's statutory right to size [sic] property as a nuisance and . . . protect the defendant who does not wish to risk incriminating himself is to delay the civil suit until after the criminal proceedings are completed. [*Moceri*, 47 Mich App at 121.]

In such cases, while a trial court need not "in every instance delay a civil abatement suit under MCL 600.3801 *et seq*. until after the criminal trial on the same facts is completed," "[t]he decision to proceed with or delay a civil abatement suit must be tested against the equity and necessity for proceeding with the civil action under the circumstances of a given case." *Id*. at 123. The trial

---

[5] We note that, along with seeking a charge of child neglect against defendant, officers reported the incident to Child Protective Services. It is not within the purview of this case for us to speculate as to whether or how defendant's conduct might implicate his parental fitness. However, that this case could have a profound impact on defendant's ability to provide and care for his children is without question.

[6] Plaintiff also does not address defendant's circumstances. Instead, plaintiff argues that defendant lacked good cause to seek an adjournment because he waited to do so until the day of the hearing, and because he did not specify a time period for which the adjournment was sought. However, that defendant waited until the hearing to request the adjournment is understandable in light of the reason he requested it: defendant needed counsel to help him better represent himself. With respect to plaintiff's suggestion that defendant failed to specify a time period for the adjournment, plaintiff is incorrect. Defendant explicitly sought an adjournment of one to two weeks.

[7] Published opinions of this Court issued prior to November 1, 1990 are not binding, but may be considered for their persuasive value. MCR 7.215(J)(1).

court did not consider this issue, but in light of the available record, we suggest that equity and necessity would have supported defendant's request for an adjournment under the facts of this case. At minimum, those considerations supported a short adjournment for the limited purpose of allowing defendant to retain counsel.

In light of all of the above, we can discern no valid reason for the trial court to have outrightly ignored defendant's request for an adjournment in order to obtain counsel. There was no evidence that plaintiff had any concern that the event that gave rise to this case would occur again, nor any evidence to suggest that defendant's immediate eviction was necessary. There also appears to have been an ongoing criminal case related to defendant's conduct and potential child protective proceedings, both of which might have implicated defendant's ability to defend himself in this case. See *Moceri*, 47 Mich App at 121-123. In sum, it is entirely unclear from the lower court record why the trial court felt the need to move so rapidly with this case. See *Zerillo v Dyksterhouse*, 191 Mich App 228, 230-231; 477 NW2d 117 (1991) (concluding that, where no prior requests for an adjournment had been made and counsel's scheduling necessitated an adjournment, the trial court's denial of the same, which led to a particularly harsh result, constituted an abuse of discretion). The trial court's decision simply did not promote the cause of justice, and under these circumstances, its failure to consider defendant's request for an adjournment constituted an abuse of discretion. See *Soumis*, 218 Mich App at 32.[8]

Defendant also suggests in relation to the trial court's denial of defendant's motion to adjourn that defendant was denied a meaningful opportunity to be heard in violation of his due-process rights. We agree.

At a minimum, due process affords parties the right to notice of the nature of proceedings *and* a meaningful opportunity to be heard before an impartial decision maker. *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005). Here, defendant was given a single opportunity to speak at the show cause hearing, and he understandably used that opportunity to plead for an adjournment because he did not feel he could adequately defend his case without counsel. Not

---

[8] We note plaintiff's suggestion on appeal that an adjournment was not necessary because one had already been granted for the same reason. Indeed, the initial show cause hearing was set for June 15, 2020, but for reasons unexplained in the lower court record, did not occur until June 25, 2020. Our review of the record did not uncover any order of adjournment or discussion related to adjourning the June 15, 2020 hearing in the lower court record. Of course, had defendant already been granted an adjournment for the purpose of obtaining counsel, we might be less inclined to conclude that denial of a second adjournment for the same reason constituted an abuse of discretion. However, again, whether plaintiff's description of events is true or not is not discernible from the lower court record. Moreover, it is somewhat telling that neither plaintiff nor the trial court indicated that this might be a basis for denying defendant's request at the show cause hearing. See MCR 2.503(B)(2) and (D)(1) (indicating that the trial court should consider the number of adjournments granted and the party requesting the adjournment in rendering a decision that promotes the causes of justice). In any event, given the lack of any reference to the change of date in the lower court record, we decline to speculate as to the issue.

only was the request not considered, which was problematic for the reasons stated above, but defendant was otherwise given no additional opportunity whatsoever to actually mount a defense to plaintiff's petition. The trial court simply rendered its decision—justifying the same with only a single and conclusory statement that plaintiff would not have "frivolously" invoked the nuisance abatement statute at issue—and proceeded to ignore defendant's pleas to be heard entirely.[9]

At the very least, defendant's plea for an adjournment to obtain counsel suggested his position that it was his son, not defendant, who fired the gunshots that led to this case, and that defendant would bar his son from further visiting his home if necessary. If the trial court was unconvinced that an adjournment was necessary, it could have at least allowed defendant to explain or support his position with evidence. Or, the court could have itself explored how the issue might have impacted what relief was appropriate under the circumstances.[10] All that is to say, where defendant was provided a single opportunity to respond to plaintiff's claim and the severe impact it could have on his life, and where that singular statement was, by all measures, ignored, we tend to agree that defendant was denied a meaningful opportunity to be heard. See *Al-Maliki v Lagrant*, 286 Mich App 483, 488-489; 781 NW2d 853 (2009) (indicating that the trial court denied the plaintiff a meaningful opportunity to be heard when it considered an issue sua sponte, was dismissive of plaintiff's counsel as to that issue, and "did not consider evidence plaintiff attempted to provide orally").

Because we conclude the trial court abused its discretion and failed to afford defendant a meaningful opportunity to be heard, we reverse and remand for further proceedings. Ordinarily, we might end our analysis there; however, because the additional issues defendant raises on appeal may be integral to the proceedings on remand and involve legal issues of significant public interest, we elect to address them.

## III. APPLICATION OF THE NUISANCE ABATEMENT STATUTES

---

[9] After defendant was given the opportunity to speak and neither the trial court nor plaintiff responded to his statement, the trial court rendered its ruling and the following colloquy occurred:

> *Defendant*: Excuse me. Excuse me, may I speak?
>
> *The Court:* Call the next case.
>
> *Defendant:* Hello? Hello?
>
> *Plaintiff's Counsel:* Thank you, Your honor.
>
> *The Court:* Thank you.

[10] As further indicated below, nuisance abatement proceedings are equitable in nature, see MCL 600.3805, and the trial court had broad authority to fashion a remedy in this case that was appropriate in light of all of the circumstances, *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 275-276; 761 NW2d 761 (2008); *Marshall v Consumers Power Co*, 65 Mich App 237, 257; 237 NW2d 266 (1975).

Defendant contends that the trial court erred by concluding that an abatable nuisance existed on the basis of a singular, noncontinuous event. Relatedly, defendant contends that the trial court erred in abating the alleged nuisance because no evidence of "community blight" was presented. Given the particular circumstances of this case, we agree that the singular event did not constitute an abatable nuisance under Michigan law. However, defendant's argument that plaintiff was required to present evidence of "community blight" is premised on a misconception of the law that we elect to clarify before remand proceedings take place.

Plaintiff brought its claim under the authority of the public nuisance statutes, MCL 600.3801 *et seq*. "Nuisance-abatement proceedings brought in the circuit court are generally equitable in nature." *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 430; 770 NW2d 105 (2009). See also MCL 600.3805 (permitting actions to abate public nuisances as a form of "equitable relief"). We review the trial court's equitable considerations de novo, but the findings of fact underpinning those considerations for clear error. *Capitol Props Group*, 283 Mich App at 430. "A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake has been made." *Id*.

We review issues of statutory interpretation de novo. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). "The primary rule of statutory interpretation is that we are to effect the intent of the Legislature." *Stanton v City of Battle Creek*, 466 Mich 611, 615; 647 NW2d 508 (2002). "To do so, we begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language." *Odom v Wayne County*, 482 Mich 459, 467; 760 NW2d 217 (2008) (quotation marks and citation omitted). If the language is unambiguous, the intent of the Legislature is clear and "judicial construction is neither necessary nor permitted." *Id*. (quotation marks and citation omitted).

MCL 600.3801 prescribes what may be considered an abatable public nuisance and provides in pertinent part:

> (1) A building, vehicle, boat, aircraft, or place is a nuisance if 1 or more of the following apply:
>
> * * *
>
> (g) It is used to facilitate armed violence in connection with the unlawful use of a firearm or other dangerous weapon.
>
> * * *
>
> (3) All controlled substances and nuisances shall be enjoined and abated as provided in this act and the court rules. [MCL 600.3801(1)(g) and (3).]

Where a nuisance exists under MCL 600.3801, a township "in which the nuisance is located may maintain an action for equitable relief . . . to abate the nuisance and to perpetually enjoin any person . . . who owns, leases, conducts, or maintains the building . . . from permitting or suffering the building . . . to be used for any of the purposes or acts or by any of the persons described in

section 3801." MCL 600.3805. Where a nuisance exists under MCL 600.3801 and an action is brought under MCL 600.3805, the statutory scheme provides that the trial court "shall enter an order of abatement as a part of the judgment in the action," and may order any of the following:

> (a) The removal from the building or place of all furniture, fixtures, and contents.
>
> (b) The sale of the furniture, fixtures, and contents in the manner provided for the sale of goods under execution.
>
> (c) The effectual closing of the building or place against its use for any purpose, and so keeping it closes for a period of 1 years, unless sooner released as provided in this chapter.
>
> (d) Any other equitable relief the court considers necessary. [MCL 600.3825(1)(a)-(d).]

Plaintiff bears the burden of proving "that the material allegations of the complaint are true." MCL 600.3815(4).

> Within the context of the nuisance abatement statutes, our Supreme Court has noted:
>
>> Because the public nuisance statute allows the abatement of property used in a proscribed manner without specifying the activity that will constitute a nuisance, we are aided in the definition of a nuisance by general public nuisance law. This Court has defined a public nuisance as involving "not only a defect, but threatening or impending danger to the public . . . ." *Kilts v Kent Co Bd of Supervisors*, 162 Mich 646, 651, 127 NW 821 (1910). Similarly, this Court has declared a public nuisance where an act "offends public decency." *Bloss v Paris Twp*, 380 Mich 466, 470, 157 NW2d 260 (1968). Finally, *Garfield Twp v Young*, 348 Mich 337, 342, 82 NW2d 876 (1957), held that to constitute a nuisance
>>
>>> the activity must be harmful to the public health, or create an interference in the use of a way of travel, or affect public morals, or prevent the public from the peaceful use of their land and the public.
>>
>> The rationale is that a nuisance involves a *continuing* detrimental effect on the public. The nuisance abatement statute serves the same general purpose. [*Michigan ex rel Wayne Co Prosecutor v Bennis*, 447 Mich 719, 731-732; 527 NW2d 483 (1994) (*Bennis I*), aff'd by *Bennis v Michigan*, 516 US 442; 116 S Ct 994; 134 L Ed 2d 68 (1996) (*Bennis II*) (footnote omitted).]

Relatedly, Black's Law Dictionary defines "nuisance" as

> A condition, activity, or situation (such as a loud noise or foul odor) that interferes with the use or enjoyment of property; esp., a *nontransitory condition* or *persistent activity* that either injures the physical condition of adjacent land or interferes with its use or with the enjoyment of easements on the land or of public highways. [*Black's Law Dictionary* (11th ed) (emphasis added).]

58 Am Jur 2d, Nuisances, § 60, provides:

> Nuisance involves the idea of continuity or recurrence. The maintenance of a nuisance ordinarily implied a continuity of action over a substantial period of time, and the continuance of the acts constituting the nuisance for an unreasonable period. Thus, to constitute a nuisance, there must be a continuousness or a recurrence of the acts by which it is created. However, it is not always necessary that the acts charged are habitual or periodical. The duration of a particular condition is an important factor in determining whether the interference caused is sufficiently substantial to be deemed a nuisance but not a dispositive one. Thus, where a single act produces a continuing result, the nuisance may be complete without a recurrence of the act. [Footnotes omitted.]

All that is to say, a singular act tends not to constitute an abatable nuisance unless there is an element of continuity to the act's detrimental effects. See *Bennis I*, 447 Mich at 732.[11]

---

[11] By way of example, in *Detroit v Nationwide Recover, Inc*, unpublished per curiam opinion of the Court of Appeals, issued March 18, 2021 (Docket No. 348814), pp 7-8, this Court provided a comprehensive list of the types of activities that have been considered public nuisances in the past:

> "Nuisance is the great grab bag, the dust bin, of the law." *Awad v McColgan*, 357 Mich 386, 389; 98 NW2d 571 (1959), overruled in part on other grounds *Mobil Oil Corp v Thorn*, 401 Mich 306, 310, 312 (1977). Indeed, past nuisance actions have concerned a wide variety of factual scenarios, including the use of personalty, *State ex rel Dowling v Martin*, 314 Mich 317, 324; 22 NW2d 381 (1946) (automobile used in illicit gambling scheme), legitimate business activities on private realty, *Garfield Twp*, 348 Mich at 342-343 (operation of a junk yard), negative publicity, *Adkins v Thomas Solvent Co*, 440 Mich 293, 306; 487 NW2d 715 (1992) (publicity concerning contaminated ground water), riparian rights, *State ex rel Muskegon Booming Co v Evart Booming Co*, 34 Mich 462, 473-474 (1876) (use of a riverbed), widespread criminal activity, *State ex rel Wayne Co Prosecutor v Bennis*, 447 Mich 719, 733; 527 NW2d 483 (1994) (ongoing street prostitution in certain neighborhoods), unpleasant odors, *Grand Rapids v Weiden*, 97 Mich 82, 83-84; 56 NW 233 (1893) ("intolerable stench" emanating from a rendering plant), violations of zoning ordinances, *Travis v Preston*, 249 Mich App 338, 351; 643 NW2d 235 (2002) (pig farm allegedly operated contrary to local zoning), the publicly sanctioned erection of structures, *Kilts v Bd of Supervisors of Kent Co*, 162 Mich 646, 653; 127 NW 821 (1910) (water tower erected on county farmland), noise levels, *Capitol Props Group, LLC v 1247 Ctr St, LLC*, 283 Mich App 422, 429; 770 NW2d 105 (2009) (nightclub operated near residential dwellings), public roadways, *Stremler v Michigan Dept of State Highways*, 58 Mich App 620, 622; 228 NW2d 492 (1975) (wrongful-death action alleging defective road design, construction, and maintenance), and the public display of sexually explicit images,

In *State ex rel Patterson v Motorama Motel Corp*, 105 Mich App 224, 225, 229-230; 307 NW2d 349 (1981), abrogated by *Bennis I*, 447 Mich at 724, our Supreme Court held within the context of MCL 600.3801 that "a single instance of illegal conduct" was insufficient to create an abatable nuisance. We noted: "[a] nuisance involves the notion of repeated or continuing conduct and should not be based upon proof of a single isolated incident unless the facts surrounding that incident permit the reasonable inference that the prohibited conduct was habitual in nature." *Id*. As noted, *Bennis I* overruled *Motorama,* and the majority's justification for doing so in that case is particularly instructive here.

In *Bennis I*, the co-owner of a vehicle was arrested for gross indecency after engaging in sexual conduct with a prostitute inside the vehicle. *Bennis I*, 447 Mich at 723. Thereafter, the Wayne County Prosecutor brought a nuisance abatement action under MCL 600.3801, alleging that the vehicle was a public nuisance. *Id*. The trial court agreed and abated the interests of both the guilty co-owner and his wife, the other co-owner of the vehicle. *Id*. at 724. Citing *Motorama*, this Court reversed, holding that "proof of a single incidence of lewdness, assignation, or prostitution is insufficient to establish a nuisance." *Id*. Our Supreme Court then granted leave on a number of issues, including, in pertinent part: whether the single act of lewdness could fall within the definition of nuisance as it pertained to MCL 600.3801, and whether the innocent co-owner's interest in the vehicle could properly be abated where she had no knowledge of her husband's conduct. *Id*. at 722, 731.

The Court held that the single act was sufficient for the purposes of the statute, but did so only because the single act could be said to have contributed to an otherwise continuing nuisance. *Id*. at 733-734. In overruling *Motorama*, the Court noted that Michigan law "does not specifically require more than a single incident of conduct." *Id*. at 730. However, this did not discount the fact that the nuisance the conduct created must itself be continuous in nature. See *id*. at 732 (noting that the nuisance itself "involves a continuing detrimental effect on the public"). Thus, in *Bennis I*, the single act of prostitution was sufficient because it contributed to an already-existing nuisance: ongoing and continuing prostitution in the neighborhood in which the act occurred. *Id*. at 730-734.[12]

---

*Bloss v Paris Twp*, 380 Mich 466, 470; 157 NW2d 260 (1968) (explicit films at drive-in theater on screen visible to public).

In each of these cases, the element of continuity as to the detrimental effect of the nuisance is apparent.

[12] The Court referred to MCL 600.3815 for the contention that evidence of an existing, neighborhood nuisance was relevant to an abatement action over the vehicle. The statute provides that:

In an action brought under this chapter, evidence of the general reputation of the building, vehicle, boat, aircraft or place is admissible for the purpose of proving the existence of the nuisance. [MCL 600.3815(1).]

The Court noted that multiple members of the community testified about the condition of the neighborhood and its reputation for prostitution. *Id*. at 733. Some of those witnesses complained that they had been personally solicited multiple times, and one witness indicated that he was present when his minor child witnessed an act of prostitution. *Id*. at 733-734. The arresting officer further indicated that multiple arrests for prostitution had been made in the neighborhood. *Id*. at 733. With the above in mind, the Court concluded:

> Vehicles that enter the neighborhood in order to solicit acts of prostitution are being "used for" the continuance of [a] nuisance. Therefore, we would hold that the nuisance abatement statute allows the abatement of a vehicle where the driver entered into and thereby contributed to an existing condition that is a public nuisance.
>
> \* \* \*
>
> [T]he one act of nuisance by [the co-owner] in his vehicle must be viewed in light of the larger and continuing nuisance occurring in the neighborhood. Where testimony surrounding proof of an incident of prostitution unequivocally establishes that the neighborhood has a reputation for prostitution, the property contributing to the continuance of the nuisance may be abated pursuant to the statute. [*Id*. at 734, 737.]

Thus, for the purposes of this case, the crux of the *Bennis I* decision is that a single act can constitute an abatable nuisance within the meaning of the abatement statutes where that act contributes to an otherwise already-existing and continuing nuisance. See *id*. at 729-737.[13]

With the above in mind, we conclude that plaintiff failed to adequately establish a nuisance under Michigan law in this case. Plaintiff alleged simply that the single incident of gunfire both created and constituted the nuisance, which was clearly insufficient under *Bennis I*. See *United States v Marls*, 227 F Supp 2d 708, 715-716 (ED Mich, 2002) (indicating that a single act of soliciting prostitution from a vehicle was not sufficient under *Bennis I* for forfeiture of the vehicle where the Government made only "general assertions" that a public nuisance existed and the trial court therefore could not make the requisite "case by case determination based on the industry, character, volume, time and duration of the alleged nuisance" that it did, in fact, exist).[14] See also

---

The Court reasoned that "[t]he nuisance abatement statute's use of the disjunctive 'or' allows us to consider the reputation of the vehicle *or* the place to determine whether a nuisance exists." *Id*.

[13] Notably, the Supreme Court of the United States granted certiorari as to whether depriving the innocent co-owner of her interest in the vehicle violated her rights under the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment. *Bennis II*, 516 US at 443. The *Bennis II* majority did not directly address the single-act issue that is before this Court.

[14] Although we are not bound by the opinions of federal district courts, they may be considered for their persuasive value. *Johnson v Vanderkooi*, 502 Mich 751, 764 n 6; 918 NW2d 785 (2018).

*Warren v Executive Art Studio, Inc*, unpublished per curiam opinion of the Court of Appeals, issued February 13, 1998 (Docket No. 197353), pp 2-3 (citing *Bennis I* and indicating that the plaintiff presented sufficient evidence that a nuisance existed where *multiple* incidents of prostitution at the defendant's massage parlor were documented over a ten-month period).[15] Plaintiff did not and has not alleged that defendant's conduct contributed to an otherwise existing nuisance, nor did the evidence plaintiff presented support such an assertion. To that end, and notwithstanding the trial court's abuse of discretion when it ignored defendant's request for an adjournment, we conclude that the trial court did not have a basis to grant the relief requested as a matter of law.[16]

Plaintiff points this Court to MCL 600.3815(3), which provides:

> In an action under this chapter, it is not necessary for the court to find the property involved was being used as and for a nuisance at the time of the hearing, or for the plaintiff to prove that the nuisance was continuing at the time the complaint was filed, if the complaint is filed within 90 days after any act, any violation, or the existence of a condition described in section 3801 as a nuisance.

Plaintiff suggests that the plain language of the statute provides that single acts can constitute abatable nuisances by themselves so long as the abatement action is instituted within 90 days of the act. We disagree. The statute indicates that the nuisance need not be continuing *at the time* the petition is filed or the hearing on the same occurs, so long as the action is filed within 90 days of the creation or existence of the condition. Nothing about the statute purports to abolish the otherwise well-established rule that continuity of detrimental effect is necessary to establish a nuisance. See *Bennis I*, 447 Mich at 732.

We next turn to defendant's use of the term "community blight" in his brief on appeal. Defendant refers to plaintiff's failure to allege an ongoing nuisance outside of the single act of gunfire as a failure to establish "community blight." Defendant refers to *Bennis I* when using this terminology, and while the *Bennis I* opinion did not utilize the phrase itself, it is somewhat understandable as to how defendant arrived at the term. Surely *Bennis I* did not seek to punish individuals for their poverty, but others have suggested such is the natural extension of its logic. Justice Stevens illustrated this point in his dissenting opinion in *Bennis II*, where he briefly elected to address the single-act issue that the majority did not:

---

[15] Unpublished opinions of this Court are not binding, but we again may consider them for their persuasive value. MCR 7.215(C)(1); *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

[16] We note plaintiff's suggestion that the caselaw relied upon by defendant refers only to common-law nuisance and has no bearing on the application of the nuisance abatement statutes. Plaintiff is incorrect. At a minimum, defendant relies on *Bennis I*, which, as noted above, directly addressed the issue raised in this case. See *Bennis I*, 447 Mich at 730-732.

The car in this case . . . was used as little more than an enclosure for a one-time event, effectively no different from a piece of real property.[9]  By the rule laid down in our recent cases, that nexus is insufficient to support the forfeiture here.

---

[9] In fact, the rather tenuous theory advanced by the Michigan Supreme Court to uphold this forfeiture was that the neighborhood where the offense occurred exhibited an ongoing "nuisance condition" because it had a reputation for illicit activity, and the car contributed to that "condition." On that view, the car did not constitute the nuisance of itself; only when considered as a part of the particular neighborhood did it assume that character. One bizarre consequence of this theory, expressly endorsed by the Michigan high court, is that the very same offense, committed in the very same car, would not render the car forfeitable if it were parked in a different part of Detroit, such as the affluent Palmer Woods area. This construction confirms the irrelevance of the car's mobility to the forfeiture; any other stationary part of the neighborhood where such an offense could take place— a shed, for example, or an apartment—could be forfeited on the same rationale. Indeed, if petitioner's husband had taken advantage of the car's power of movement, by picking up the prostitute and continuing to drive, presumably the car would not have been forfeitable at all.  [*Bennis II*, 516 US at 463-464, 464 n 9 (STEVENS, J., dissenting) (citations omitted).]

---

See also *Bennis I*, 447 Mich at 744-745 (CAVANAGH, J., dissenting) (indicating that the majority's conclusion that the condition of an entire neighborhood constituted a public nuisance was problematic); *Bennis I*, 447 Mich at 762 (LEVIN, J., dissenting) ("The reasoning of the lead opinion would mean that a customer's vehicle used for prostitution may be abated as a nuisance when driven to and so used on Eight Mile Road in Detroit, but not when so used in Northville or Charlevoix.").

Without implying more, and because we think the issue particularly relevant to the facts of this case in light of the "community blight" terminology so naturally employed by defendant, it is at least prudent to note that there is some value to the concerns raised in the dissents above.  That is, at the very least, courts should be wary of inadvertently using "community blight" as a synonym for any one of the specific conditions that could give rise to a nuisance under MCL 600.3801. Impoverished individuals should not be penalized in a manner that their wealthier counterparts would not be simply because they are impoverished.  Courts should be cognizant of the line between promoting neighborhood improvement by abating nuisances and punishing individuals for their financial status.  See *Bennis I*, 447 Mich at 734-735, 737 (indicating that an underlying purpose of the nuisance abatement statutes is to prevent "continuing blight of neighborhoods"). These considerations are important not only because of existing law that requires abatement actions to be considered on a case-by-case basis according to the underlying facts, see *Marshall v Consumers Power Co*, 65 Mich App 237, 257; 237 NW2d 266 (1975), but because such actions are equitable in nature and trial courts have such broad authority to fashion appropriate remedies, MCL 600.3805; *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 275-276; 761 NW2d 761 (2008).

All that is to say, forgetting the unfortunate language defendant employs, there is merit to the spirit of his argument. In *Bennis I*, there was substantial evidence presented to establish that lewdness and prostitution were ongoing problems in the surrounding neighborhood when the defendant co-owner elected to engage in the same conduct. *Bennis I*, 447 Mich at 733-734. His single act *contributed* to the *existing* nuisance of lewd behavior and prostitution. *Id*. at 737. Here, plaintiff alleged that defendant's home was a nuisance because it was used to facilitate armed violence in connection with the unlawful use of a firearm in violation of MCL 600.3801(g). Defendant's argument is essentially that (1) the single act of gunfire was not sufficient to establish a nuisance in and of itself, and (2) the single act could not be said to have contributed to a greater nuisance because plaintiff failed to establish that armed violence was an ongoing nuisance in the surrounding area. We agree. Plaintiff neither alleged nor established that fact.[17]

We reverse and remand for further proceedings consistent with this opinion. On remand, the trial court must follow the law concerning nuisances and the nuisance abatement statutes. The court should further engage with any necessary equitable considerations after the parties have been given an opportunity to present evidence.

We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher

---

[17] And, of course, allegations or evidence of "community blight" would be insufficient to establish the same.

-14-